[Cite as *State v. Fowler*, 2016-Ohio-5867.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

STATE OF OHIO

    Plaintiff-Appellee

v.

LUCAS FOWLER

    Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. CASE NO. 2015-CA-95

T.C. NO. 15CR97

(Criminal appeal from
  Common Pleas Court)

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___16th___ day of _____September_____, 2016.

· · · · · · · · · ·

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, 140 E. Broadway Avenue, Tipp City, Ohio 45371
    Attorney for Defendant-Appellant

· · · · · · · · · · · ·

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Lucas Fowler, filed October 21, 2015. Fowler was found guilty after an October 6-8, 2015 jury trial on one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree, as well as one count of trafficking in heroin, in violation of R.C. 2925.03(A)(1), a

felony of the fifth degree. The record reflects that Fowler sold heroin to the victim herein, B.J. Quickle, who subsequently died of acute heroin intoxication. Fowler was sentenced to 10 years for the involuntary manslaughter offense and one year for the trafficking offense, to be served concurrently.

{¶ 2} Folwer was indicted on March 2, 2015. The record reflects that Fowler was initially tried on September 15-16, 2015, and that the proceeding ended in a mistrial on Fowler's motion after the jury heard testimony that Fowler had previously served time in prison. On September 25, 2015, Fowler filed a motion to change the venue of the second trial due to "adverse and pervasive pre-trial publicity." On October 2, 2015, the trial court issued an entry that provides that Fowler's "motion for a change of venue will be held in abeyance pending jury selection on October 6, 2015."

{¶ 3} Fowler asserts four assignments of error herein. His first assigned error is as follows:

THE TRIAL COURT ERRED IN DEALING IMPROPERLY WITH POTENTIAL JUROR MISCONDUCT.

{¶ 4} We initially note that at the start of the State's voir dire, the following exchange occurred:

MR. WILSON: Thank you Your Honor. Can you follow the law? I mean, that's going to be the crux of the questioning that you get. As the twelve of you sit here, I want to start with, can you follow the law as instructed by the Judge. If he tells you that you have to do something, *you have to accept a certain definition* and accept a certain rule, can you do that? [Emphasis added]. Can everybody agree to that as you sit here?

(Jurors respond affirmatively.)

MR. WILSON: I started with that question because that's the first thing that I wanted you to hear from the State of Ohio because it's incredibly important. Really it is the basis of your duty as a juror to follow the law as instructed by the Judge. If anybody is going to have a problem with that, then we need to know that on the front.

* * *

{¶ 5} Fowler directs our attention to the following exchange that occurred after the State rested and the defense indicated that it did not intend to present any evidence:

THE COURT: * * * I did want to disclose something to counsel. When I came back from lunch, the court's bailiff informed me that Juror # 6 * * * had come to her over the lunch hour and he had indicated that this morning he was sitting in the jury room drinking a cup of coffee, and he heard one of the other jurors who apparently was behind him standing - -he recognized it as being a female and I believe there is only two women on our jury.

He recognized it as a women's [sic] voice, but he didn't identify the person. But apparently he overheard her telling another juror, and I don't know if that other juror was also a woman or a man, I'm not sure, that she had looked up a definition of involuntary manslaughter on the hearing [sic].

And at that point the other person said something along the lines of, "Oh, what was it?" And apparently she just responded, "Oh, it's a doozy." I don't know what that means, and that was the extent of it. He let the court's

bailiff know that. I don't think there was any other conversation.

The Court is open to suggestions as to how we should handle it. I think there are a couple options. One would be for the Court to take no specific action but to emphasize when it's reading its instructions that the instructions the Court gives is the law of the case, and that he jurors are to follow that law, no other law, whether that be a preconceived notion of what they believe the law is or some other law that they may have seen. I could do that. We could bring the two female jurors in and figure out which one did look that definition up on the internet, and we could inquire.

I am open to suggestions. I am leaning towards simply emphasizing to the jurors when I give instructions that they are to follow the law as given to them by this Court, and I would think that that would suffice, but I am willing to consider other options.

* * *

MR. WILSON: Your Honor, I believe that the option number one is probably the best, that you just emphasize that all the law comes from the Court and the Court's instructions of law. That any preconceived notions that they have about what the law may be have to be put aside and to take all their instructions from you and that no research should be done on what the law is because you're going to give them the law.

THE COURT: Just for the record, I typically when I admonish jurors, I'm confident that I told them they had to render their verdict in this case based only on what transpires in this courtroom. I'm confident on that. I

immediately go on to explain that they shouldn't do any independent investigation such as getting on line, looking up definitions or looking for reports. I'm pretty sure I did not say that specifically in this case. But I think the general admonition that their verdict be based only on what transpires in the courtroom was sufficient enough that the jurors should have known not do to that.

Do you have a suggestion, Miss Richards, how the Court should handle this matter?

MS. RICHARDS: Your Honor, I'm gonna admit to you that I'm just overwhelmed at this point again because my concern is based on the information that this trial court has disclosed is who else was in the jury room besides the gentleman that - - he wasn't looking. From the way the Court disclosed the information, Juror #6 just heard a female voice behind him.

I'm not sure I understand how many other people were in the room and heard that, and what I'm concerned about is how much other information did this female juror look up on line. That's my concern.

And if she blurts out in that one instance, and this gentleman was brave enough to come forward and disclose it to Mrs. Gibson, then what would happen, I mean, if she had blurred [sic] other things out to other people. Is there some way we can do just a small brief, distinct inquiry to this - - these two female jurors to find out if one or the other has blurbed [sic] out any other information or looked up any other information?

THE COURT: Well, the Court is of the opinion that the alleged juror misconduct is limited to what the person told the Court's bailiff. *I am not willing to launch an investigation into things that are not before the Court.* [Emphasis added].

So upon consideration of all the facts and circumstances, the court is going to emphasize at the beginning of its instructions that the jury must accept the instruction as given to them by the Court.

They must apply the law as it is given to them and that they may neither change the law nor apply their own idea of what they think the law should be, whether that stems from a preconceived notion or something they may have heard or read, so the Court is going to handle it that way.

There is no evidence before the Court that any other alleged misconduct occurred. So we can bring the jurors in.

{¶ 6} Fowler asserts that there "is no sign in the transcripts that the court took the necessary steps to adequately investigate potential jury bias and misconduct." We agree.

{¶ 7} As this Court has previously noted, any "independent inquiry by a juror about the evidence or the law violates the juror's duty to limit his considerations to the evidence, arguments, and law presented in open court, and such activity is juror misconduct. * * * ." *State v. Gunnell*, 2d Dist. Clark No. 09-CA-0013, 2010-Ohio-4415, ¶ 76. This Court has further noted as follows:

When possible jury misconduct is brought to the attention of the trial judge, the court has a duty to investigate the matter. *State v. Rudge* (1998),

89 Ohio App.3d 429, 442, 624 N.E.2d 1069. Because the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, the court's decision on the scope of the proceedings necessary to discover misconduct in each case is reviewed only for an abuse of discretion. *United States v. Shackleford* (1985), 777 F.2d 1141, 1145.

*State v. Miller*, 2d Dist. Montgomery No. 18011, 2000 WL 1369918, *4 (Sept. 22, 2000). As this Court has previously determined:

An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

*State v. Rush*, 2d Dist. Greene No. 2015-CA-54, 2016-Ohio-4895, ¶ 8.

{¶ 8} "In reviewing circumstances suggesting juror misconduct, we must employ a two-tier analysis: (1) determine whether there was juror misconduct and (2) if juror misconduct is found, determine whether it materially affected the defendant's substantial rights. *See State v. Taylor* (1991), 73 Ohio App.3d 827, 833, 598 N.E.2d 818, 821." *State v. Hopfer*, 112 Ohio App. 3d 521, 543, 679 N.E.2d 321 (2d Dist. 1996).

{¶ 9} As this Court noted in *State v. Gunnell,* 2d Dist. Clark No. 09-CA-0013, 2010-Ohio-4415, ¶ 77-88 (footnotes omitted):

"It is well-established that 'the party complaining about juror misconduct must establish prejudice.' " *State v. King*, Lucas App. No. L–08–1126, 2010–Ohio–290, at ¶ 23, quoting *State v. Adams*, 103 Ohio St.3d 508, 817 N.E.2d 29, 2004–Ohio–5845, ¶ 42. This requirement of prejudice is reflected in Crim.R. 33(A)(2), which provides: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: (2) Misconduct of the jury, prosecuting attorney, or the witnesses of the state[.]"

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial court, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial court ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* [.]" *Smith v. Phillips* (1982), 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78.

In *Remmer v. United States* (1954), 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed.2d 654, a person told a juror during the trial that a favorable outcome for the defendant could be potentially lucrative. The juror immediately

informed the trial court of this communication. The judge, prosecutor, and FBI investigated the matter and determined that the comment was said in jest and no further action was taken. The defendant was never informed of the contact with the juror until after he was convicted. On appeal, the United States Supreme Court vacated the conviction and explained the importance of a hearing to determine whether the juror was impacted by the outside communication:

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial.

"* * *

"The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 229–30.

The Ohio Supreme Court has relied on *Remmer* to require the trial court to hold a hearing in cases involving outside communications with jurors: "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror." *State v. Phillips*, 74 Ohio St.3d 72, 88, 656 N.E.2d 643, citing *Smith v. Phillips* (1982), 455 U.S. at 215–16, and *Remmer*. See also *State v. Stallings*, 89 Ohio St.3d 280, 296, 731 N.E.2d 159, 2000–Ohio–

164. Similarly, if juror misconduct in the form of an independent investigation is discovered, the trial court is "required to inquire of that particular juror to determine whether he or she remained impartial after the independent investigation." [*State v.*] *Spencer*, 118 Ohio App.3d at 874, 694 N.E.2d 161. See also *State v. Gordon*, Stark App. No. 2005CA00031, 2005–Ohio–3638, at ¶ 54, quoting *State v. Gray* (July 27, 2000), Cuyahoga App. No. 76170.

The inquiry of whether the juror has been biased by the outside information should not be left to counsel for the parties. Rather, the trial court has the duty to protect the rights of the State and the defendant to a fair and impartial jury. This duty is reflected in R.C. 2945.03, which provides that: "The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." Therefore, if an allegation arises of outside influence on the jury, the trial court must lead the inquiry to determine whether prejudice has resulted from the juror misconduct.

The United States Court of Appeals for the First District summarized the trial court's duties:

" '[When] a colorable claim of jury taint surfaces during jury deliberations, the trial court has a duty to investigate the allegation promptly.' [*U.S. v.*] *Bradshaw*, 281 F.3d at 289 (footnote omitted); see also

*United States v. Corbin*, 590 F.2d 398, 400 (1st Cir.1979). The investigation must 'ascertain whether some taint-producing event actually occurred,' and then 'assess the magnitude of the event and the extent of any resultant prejudice.' *Bradshaw*, 281 F.3d at 289. Even if both a taint-producing event and a significant potential for prejudice are found through the investigation, a mistrial is still a remedy of last resort. See *id*. The court must first consider 'the extent to which prophylactic measures (such as the discharge of particular jurors or the pronouncement of curative instructions) will suffice to alleviate prejudice.' *Id.* This painstaking investigatory process protects the defendant's constitutional right to an unbiased jury, *id.* at 289–90, as well as his [' "]valued right to have his trial completed by a particular tribunal,[" '] [*U.S. v.*] *Jorn*, 400 U.S. at 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (plurality opinion) (quoting *Wade* [*v. Hunter*], 336 U.S. at 689, 69 S.Ct. 834, 93 L.Ed. 974). The investigation is also critical in creating a sufficient record to permit meaningful appellate review of the [trial] court's manifest necessity determination." *United States v. Lara–Ramirez*, (1st Cir.2008), 519 F.3d 76, 86.

When conducting the inquiry into juror misconduct and any resulting bias or prejudice, a trial court normally will need to question the juror. The United States Supreme Court has cautioned trial courts against automatically dismissing the juror's credibility:

"Respondent correctly notes that determinations made in *Remmer*-type hearings will frequently turn upon testimony of the juror in question, but

errs in contending that such evidence is inherently suspect. As we said in *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), '[o]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.' *Id.*, at 171, 70 S.Ct., at 523. See also *United States v. Reid*, 12 How. 361, 366, 13 L.Ed. 1023 (1852)." *Smith v. Phillips*, 455 U.S. at 217 n. 7.

{¶ 10} This Court's summary of *State v. Gunnell*, 132 Ohio St.3d 442, 2012–Ohio–3236, 973 N.E.2d 243, in *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, ¶ 46-47, is further instructive:

In *Gunnell,* the Supreme Court considered whether a juror's outside research, i.e., a handwritten definition of the word "perverse" and an instruction on "involuntary manslaughter" that the juror had printed off the internet, constituted grounds for a mistrial. *Id.* at ¶ 9–10, 973 N.E.2d 243. After learning of the juror's possession of this information, the trial court conducted a brief hearing during which the court informed the parties of the issue that had developed regarding the juror's outside research and then proceeded to question the juror regarding her research, including what information she had found, why she had looked for it, and whether she had shared that information with any other jurors. *Id* . at ¶ 11, 973 N.E.2d 243. The trial court did not, however, question the juror to determine whether any prejudice or bias was created by the information or whether the juror could

disregard it. *Id.* at ¶ 14, 32, 973 N.E.2d 243. Nevertheless, the trial court found that the juror was "irreparably tainted" and declared a mistrial. *Id.* at ¶ 34, 973 N.E.2d 243.

The Supreme Court held that the trial court in *Gunnell* "did not soundly exercise [its] discretion" in declaring a mistrial because the trial court conducted a limited inquiry of the juror and failed to ascertain whether the materials viewed by the juror caused the juror to be biased or prejudiced against the defendant. *Id.* at ¶ 33–40, 973 N.E.2d 243.

{¶ 11} In *State v. Hubbard*, 8th Dist. Cuyahoga No. 92033, 2009-Ohio-5817, ¶ 15-18, the Eighth District considered appellant's assertion that the trial court erred in denying his motion for a mistrial based upon a juror's independent investigation with binoculars, to determine how far she could see, as follows:

In support of his argument that Juror No. 9's misconduct was prejudicial, appellant relies on this court's opinion in *State v. Spencer*, [118 Ohio App.3d 871, 694 N.E.2d 161(8th Dist. 1997)]. In that case, one juror notified the other 11 jurors that he had contacted a number of physicians over the weekend about prescribing methadone, an issue in the case. *Id.* at 162. The trial court learned of this misconduct and held a hearing to determine the effect of the juror's statement on the deliberations. *Id.* The trial court failed to individually question the jurors about any influence this may have had upon them, and instead, issued a stern warning about using any outside information in its deliberations. *Id.*

In *Spencer*, we reversed the trial court's denial of the defendant's

motion for a mistrial. *Id.* at 163. While we acknowledged that the trial court appropriately attempted to remedy the misconduct by issuing curative instructions and conducting a hearing, we found fault with the manner in which the court performed this task. *Id.* at 162-163. We determined that "[t]he trial court was required to inquire of that particular juror to determine whether he or she remained impartial after the independent investigation." *Id.* at 163. Without doing so, we were unable to conclude that the curative instructions overcame any prejudice and that the defendant in that case received the benefit of 12 impartial jurors. *Id.*

This case, however, is quite different from that presented in *Spencer*. In this case, the trial court followed the parameters established in *Spencer*, in determining the impact of the juror misconduct and attempting to cure said actions. First, unlike the situation in *Spencer*, the trial court interviewed Juror No. 9 outside the presence of the other jurors. The court inquired in depth into the exact actions taken by the juror and whether she was influenced by her actions. She responded that she had not. He then inquired whether she would be able to set aside her findings and deliberate solely on the evidence introduced at trial. Juror No. 9 repeatedly responded that she was able to do so. Finding Juror No. 9 unpersuaded by the independent investigation, the court then performed a voir dire of the remaining jurors in the absence of Juror No. 9. Each of the 11 remaining jurors independently affirmed that they would be able continue deliberations without "taking into account the information that was brought in extraneously by juror number

nine and continue deliberating this case to the best of [their] ability * * *." * * *

Given the record and representations made by each of the jurors, we conclude that the trial court did not abuse its discretion in denying a motion for mistrial on this ground. The record fails to demonstrate any influence that would improperly affect the jurors' fairness and impartiality when they returned to deliberations.

{¶ 12} Here, the trial court's bailiff reported to the court that a male juror reported the misconduct of a female juror, namely that an unidentified female juror had conducted independent research as to the applicable definition of involuntary manslaughter. It was reported that the juror shared this with another juror. We note also that the trial court admitted to counsel that he failed to provide the standard, essential, preliminary instructions regarding independent research at the start of trial. *Ohio Jury Instructions,* CR Section 401.09 (Rev. Feb. 20, 2010), provides in part as follows:

1. REQUIRED ADMONITION. It is important that you be fair and attentive throughout trial. Do not discuss this case among yourselves or with anyone else. * * *.

* * *

4. REPORT VIOLATION. * * * You must also not talk with anyone else about this case during the trial. If anyone should attempt to discuss the case with you, report the incident to me or to the bailiff immediately.

5. WARNING. Do not investigate or attempt to obtain additional information about this case from any source outside the courtroom. * * *

**{¶ 13}** Upon the report of the misconduct, defense counsel requested that the court investigate the allegation by conducting a brief voir dire of at least the two female jurors on the panel to determine the scope of the juror misconduct and whether Fowler's substantial rights were affected thereby. While the law is clear that the investigation of whether a juror has been influenced by outside information should not be left to counsel for the parties, the trial court refused to perform the duty mandated by *Remmer* and R.C. 2945.03, namely to immediately conduct a hearing, with the participation of all parties, to question the jurors and determine the scope of the independent research and its impact upon the juror who performed it, as well as its impact upon any other affected jurors. While the record reflects that the court instructed the jury to follow the law as provided by the court prior to deliberations, curative instructions alone are insufficient to ensure that Fowler was tried by an impartial jury. Since the court failed to employ the analysis set forth in *Hopfer,* namely to determine whether the juror misconduct affected Fowler's substantial rights, we conclude that an abuse of discretion is demonstrated. Accordingly, Fowler's first assignment of error is sustained.

**{¶ 14}** Having sustained Fowler's first assignment of error, analysis of the remaining assignments of error is not required. The judgment of conviction is reversed and this matter is remanded to the trial court for further proceedings.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Megan M. Farley
Mark J. Bamberger
Hon. Douglas M. Rastatter