[Cite as *State v. Grega*, 2013-Ohio-4094.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0036** |
| NATHANIEL J. GREGA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 080.

Judgment: Affirmed in part; reversed in part and remanded.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Judith M. Kowalski*, 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} This appeal is from the sentencing judgment in a criminal action before the Ashtabula County Court of Common Pleas. Appellant, Nathaniel J. Grega, contests the merits of his conviction and sentence on charges of robbery and petty theft. In addition to challenging the state's evidence, appellant claims that he was denied a fair trial as a result of certain procedural errors.

{¶2} The case against appellant was based upon an alleged shoplifting incident

at a Super K-Mart store in the City of Ashtabula, Ohio. The incident took place shortly before 1:00 p.m. on Friday, January 20, 2012. At that particular time, three members of the store's loss prevention staff were on duty: Manager Melody Rayel, David Hamilton, and Jessica Harchalk. Immediately prior to the incident, Hamilton and Harchalk were watching a monitor for the store's closed-circuited television system. This monitor received video from various cameras stationed throughout the store and was located in a private office near the front of the building. Rayel was performing other duties in her own office nearby.

{¶3} While watching the monitor, Hamilton noticed a white male engaging in suspicious behavior in the electronics department. The suspect appeared to be in his early thirties, wore a black leather jacket, and had brown hair with a receding hair line. Hamilton saw the suspect rapidly select a number of movie DVDs, two of which were identical. The suspect then placed the DVDs into a shopping basket and placed a bag of Doritos over them.

{¶4} Hamilton immediately informed Rayel and Harchalk of the situation. After obtaining a description of the suspect, Rayel left the "office" area and quickly attempted to locate the suspect in the store. Hamilton asked Harchalk to continue to observe the suspect's movements on the closed-circuit monitor so that he could go clock-in.

{¶5} Over the monitor, Harchalk watched the suspect exit the electronics area with the shopping basket, walk through the "party supplies" department, and eventually go into the "hardware" area. During this period, Harchalk could not see the suspect at all times due to the positions of the cameras. When the suspect left hardware, Harchalk noticed that he no longer had the basket and did not have any items in his hands.

2

{¶6} Rayel was able to locate the suspect before he exited the electronics area. Rather than confronting the suspect immediately, Rayel discreetly followed him into the "party supplies" department where she observed him placing some of the DVDs into his jacket. Upon following him to hardware, Rayel saw him place the remainder of the DVDs into his jacket and discard the shopping basket. According to Rayel, the suspect never left her eyesight during this period.

{¶7} Upon leaving hardware, the shoplifting suspect walked toward one of the primary exits to the store. As Rayel continued to "shadow" the suspect, she noticed that he never went to an available cashier so that he could pay for the DVDs. As a result, after the suspect went through the first set of automatic doors, Rayel stepped in front of him, identified herself as a member of store security, and asked him to accompany her back into the store. In response, the suspect grabbed Rayel by the shoulders, lifted her up into the air, moving her to where she was no longer blocking the second set of doors. Once he had released Rayel from his grasp, the suspect ran through the last set of doors into an adjoining mall.

{¶8} Hamilton walked through the store and saw the suspect as he walked toward the first set of exit doors. Hamilton observed the confrontation between Rayel and the suspect. When the suspect went through the second set of doors and Rayel was unable to follow, Hamilton began to chase after the suspect through the mall, yelling for him to stop. As the suspect was running, some of the DVDs fell from his jacket. Hamilton decided to give up the chase when the suspect ran by a kids' playground area in the mall. However, he was able to recover the three DVDs which the suspect had lost during the chase.

{¶9} Once the incident had ended, Harchalk contacted the Ashtabula County Sheriff's Department on behalf of the store. As part of the ensuing investigation, Deputy Ted Barger reviewed a tape of the video feed that Hamilton and Harchalk saw while the incident was occurring. When the store employees were able to stop the tape at a point which clearly showed the suspect's entire face, Deputy Barger took a still photograph of the image on his cell phone. In an effort to identify the suspect, he showed the picture to other deputies who worked the same shift. Deputy Jay Thomas was able to identify appellant as the shoplifting suspect based upon the fact that appellant was an inmate at the county jail while the deputy had worked there the previous summer.

{¶10} Appellant was indicted on charges of robbery and petty theft. Under the robbery count, appellant was initially charged with a violation of R.C. 2911.02(A)(2), a felony of the second degree. The indictment alleged that while fleeing immediately after the commission of a theft crime, appellant inflicted, or attempted to inflict, physical harm upon Melody Rayel when she tried to stop him at the store exit.

{¶11} At the close of the evidence at trial, the state moved the trial court to also instruct the jury on the offense of robbery under R.C. 2911.02(A)(3), a felony of the third degree. Pursuant to subsection (A)(3), a person can be found guilty of robbery if, while fleeing immediately after the commission of a theft crime, he uses or threatens the use of force. The state argued that robbery under R.C. 2911.02(A)(3) is a lesser included offense of robbery under 2911.02(A)(2). The trial court rejected the state's argument, but also held that the state's evidence was more relevant to the elements of the offense under subsection (A)(3) than the offense under subsection (A)(2). As a result, the court ordered that the state would be allowed to amend the first count of the indictment to the

4

offense of robbery under R.C. 2011.02(A)(3).

{¶12} The state's trial witnesses consisted of the three Super K-Mart employees, Deputy Barger, and Deputy Thomas. As part of her testimony, Melody Rayel identified appellant as the individual whom she saw placing the DVDs inside his jacket without paying for them and then picking her up by the shoulders when she tried to stop him at the store exit. Rayel further testified that appellant twisted her back in picking her up but that the pain she experienced was minimal and that she did not miss any work as a consequence of her injury. In addition, the state submitted into evidence a copy of the store surveillance tape of the incident.

{¶13} In attempting to establish an alibi defense, appellant relied solely upon the testimony of Sellers Judkins, a worker at the Harvest Church Soup Kitchen in the City of Ashtabula. Judkins stated that on the date of the shoplifting incident, he worked at the soup kitchen/food pantry from 11:30 a.m. to 1:30 p.m. He further stated that his job that day was to hand out food boxes and that he could recall giving a food box to appellant. Moreover, it was shown that appellant's name was on a food pantry "sign-in" sheet for that day. However, during cross-examination, Judkins indicated that the distribution of the food boxes on that day was completed by 12:00 p.m.

{¶14} After deliberating for less than one hour, the jury found appellant guilty of robbery, as amended, and petty theft. Upon accepting the jury verdict and conducting a separate sentencing proceeding, the trial court sentenced him to two concurrent terms of thirty-six months and six months on the respective charges.

{¶15} In appealing his conviction and sentence, appellant raises six assignments of error for consideration:

5

{¶16} "[1.] The defendant was denied the effective assistance of counsel, by reason of the fact that his trial counsel failed to excuse or challenge a juror whose family member worked at the store which the defendant was accused of robbing.

{¶17} "[2.] The defendant was denied the effective assistance of counsel by reason of the fact that his attorney failed to object to testimony regarding the [defendant's] criminal history, which was highly prejudicial and impermissible under the rules of evidence.

{¶18} "[3.] The trial court erred to the prejudice of the [defendant] by allowing impermissible testimony regarding prior crimes, wrongs or acts, in violation of Evidence Rule 404(B)."

{¶19} "[4.] The trial court erred to the prejudice of the [defendant] by not finding that robbery and theft are allied offenses of similar import, and by sentencing him concurrently but separately for each one.

{¶20} "[5.] The trial court erred in denying [the defendant's] motion for acquittal pursuant to Ohio Crim.R. 29.

{¶21} "[6.} The [defendant's] convictions are against the manifest weight of the evidence."

{¶22} Under his first assignment, appellant submits that he was denied a fair trial as a result of actions taken by his trial counsel during the voir dire process. Specifically, appellant contends that trial counsel failed to render effective assistance when he did not challenge or move to excuse Juror Gina Denunzio. According to appellant, Juror Denunzio should not have been allowed to sit on the jury because she was sufficiently "connected" to the victim of the crimes, i.e., Super K-Mart, to call into question her ability

6

to be impartial.

{¶23} Juror Denunzio was one of the original twelve jurors called for questioning at the outset of voir dire. After the trial court asked the twelve jurors a series of general queries, it then inquired whether any juror had any issue he/she wanted to raise about their qualifications to sit on the jury. In response, Juror Denunzio told the court that she had an adult daughter employed by the Super K-Mart store in the City of Ashtabula since 2010. Juror Denunzio further stated that, although her daughter may have been working the day of the alleged crimes, she had no reason to believe that her daughter was involved in the incident. The following colloquy then occurred:

{¶24} "THE COURT: Well, the fact that you have your daughter as an employee of K-Mart and we're talking about the Ashtabula Township K-Mart at the mall, and the fact that K-Mart is alleged to be at least the victim of the theft, would that affect your judgment in this case?

{¶25} "GINA DENUNZIO: No, I really don't think it would.

{¶26} "THE COURT: Would you be protective of K-Mart because some of your family works there?

{¶27} "GINA DENUNZIO: No."

{¶28} During subsequent questioning by the prosecutor and appellant's counsel, Juror Denunzio indicated that, even though her daughter still lived with her, they rarely had specific conversations about her daughter's work. Juror Denunzio also reiterated that she had no knowledge of appellant's case until the day of the trial.

{¶29} After Juror Denunzio answered the respective questions of both attorneys, neither side contested her inclusion in the jury. This occurred notwithstanding the fact

7

that each attorney, including appellant's trial counsel, passed on one of his peremptory challenges.

{¶30} "'In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (* * *). See, *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006 Ohio 7007, at ¶11.  (* * *) First, it must be determined that counsel's performance fell below an objective standard of reasonableness.  *Id.*  Second, it must be shown that prejudice resulted.  *Id.* "Prejudice exists when 'the result of the trial would have been different' but for counsel's ineffectiveness."  *Id.*' *State v. Woodard*, 11th Dist. Ashtabula No. 2009-A-0047, 2010 Ohio 2949, ¶11.

{¶31} "In applying the foregoing standard, a 'reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation.  *Strickland*, (466 U.S. at 689.)  An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness.  *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995 Ohio 171, 656 N.E.2d 643, (* * *).'  *State v. DelMonico*, 11th Dist. Ashtabula No. 2003-A-0022, 2005 Ohio 2902, ¶13." *State v. Allen*, 11th Dist. Lake No. 2011-L-157, 2013-Ohio-434, ¶15-16.

{¶32} When a claim of ineffective assistance is based upon alleged errors in the voir dire process, judicial scrutiny of counsel's actions tends to be highly deferential:

{¶33} "Voir dire is largely a matter of strategy and tactics.  * * *.  Decisions on the exercise of peremptory challenges are a matter of experience and trial technique and are a part of that strategy.  * * *.  Defense counsel, who observed the jurors

8

firsthand, is in a much better position to determine whether a prospective juror should be peremptorily challenged." (Citations omitted.) *State v. Cruz*, 12th Dist. Butler No. CA2012-03-059, 2013-Ohio-215, ¶40.

**{¶34}** The foregoing point has also been made by the Supreme Court of Ohio:

**{¶35}** "'The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts. (* * *) [T]he selection process is more an art than a science, and more about people than about rules.' *Romero v. Lynaugh* (C.A.5, 1989), 884 F.2d 871, 878. For these reasons, we have recognized that 'counsel is in the best position to determine whether any potential juror should be questioned and to what extent.' [*State v.*] *Murphy*, 91 Ohio St.3d at 539, * * *." *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶64.

**{¶36}** Given this deferential standard, the *Mundt* court further held that when the defendant asserts that his trial counsel allowed a biased juror to be impaneled, his claim of ineffective assistance can only succeed if there is a showing of actual bias against him. *Id.*

**{¶37}** In this case, appellant's assertion of bias was predicated upon the fact that Juror Denunzio's daughter worked at the store where the alleged crimes occurred; i.e., it is appellant's position that Juror Denunzio would be apt to favor Super K-Mart in order to protect her daughter's employment. However, in raising the issue of her daughter's job before the trial court, Juror Denunzio never indicated that she was concerned that her actions as a juror could have any adverse effect upon her daughter's job. Instead, she expressly stated that she was only raising the point so that the trial court would be

9

aware of the situation. Furthermore, when the trial court asked Juror Denunzio whether she would have a tendency to favor the store over appellant, she specifically said no. In addition, Juror Denunzio emphasized that she and her daughter never discussed the case and that she had no knowledge of appellant's arrest until the day of trial.

{¶38} In light of the foregoing, appellant cannot demonstrate that Juror Denunzio was *actually* biased against him. Accordingly, he cannot satisfy either prong of the test for ineffective assistance of trial counsel; i.e., he is unable to show that the performance of his counsel was deficient or that the outcome of his trial was altered as a result of the inclusion of Juror Denunzio on the jury. For this reason, appellant's first assignment is without merit.

{¶39} Appellant's next two assignments of error are interrelated, and thus will be addressed together. As part of its case, the state presented Deputy Thomas' testimony regarding his identification of appellant as the person in the photograph taken from the surveillance tape. In explaining how he knew appellant, Deputy Thomas testified that he had been assigned to work at the county jail while appellant was an inmate there in 2011. Citing Evid.R. 404(B), appellant maintains under his third assignment that it was plain error for the trial court to allow the "jail" testimony because it constituted evidence of his prior bad acts. Under his second assignment, appellant asserts that his counsel rendered ineffective assistance by failing to object to the testimony.

{¶40} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

10

accident."

{¶41} Under the "identity" exception in the foregoing rule, testimony regarding a police officer's prior encounter with the defendant is admissible for purposes of showing why the officer was able to recognize him. *State v. Tuff*, 11th Dist. Lake Nos. 2010-L-082 and 2010-L-083, 2011-Ohio-6846, ¶46. This is permissible even if such testimony has the effect of indicating that the defendant has a prior criminal record. In *Tuff*, this court upheld the admission of two officers' testimony as to prior "dealings" or cases with the defendant when the identification of the defendant was relevant to a critical issue in the case. *Id.* at ¶47.

{¶42} In this case, Deputy Thomas was not present at the store when the theft of the DVDs took place. Hence, the deputy's explanation as to his prior encounters with appellant was necessary to explain how he could identify him as the suspect in the still photograph. Moreover, since Deputy Thomas was the only witness who could identify appellant by name, his testimony was both relevant and critical to the state's case. As a result, the deputy's testimony was admissible under the "identity" exception of Evid.R. 404(B).

{¶43} Given the foregoing analysis, the trial court did not err in allowing Deputy Thomas' reference to appellant's prior incarceration into evidence. Furthermore, since any objection to the disputed testimony should have been overruled, appellant has not established that the performance of his trial counsel was deficient in any respect. Thus, appellant's second and third assignments are both lacking in merit.

{¶44} Under his fourth assignment, appellant submits that the trial court erred in imposing separate sentences for the offenses of robbery and theft. He maintains that

11

since robbery is predicated upon the commission of a theft offense, the two crimes are allied offenses of similar import and that the court was required to merge the crimes for purposes of sentencing.

{¶45} As an initial point, the trial record shows that when the trial court imposed appellant's sentence during the separate hearing, appellant did not object. Under most circumstances, the failure to object would constitute a waiver of the issue. However, the Supreme Court of Ohio has expressly held that the imposition of multiple sentences for allied offenses of similar import is always considered plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶31.

{¶46} R.C. 2941.25 governs a criminal conviction on multiple counts:

{¶47} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶48} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶49} The Ohio Supreme Court's most recent pronouncement as to the proper application of R.C. 2941.25 was stated in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Even though the lead opinion in *Johnson* could only garner a plurality of the Supreme Court, this court adopted the plurality analysis in *State v. Muncy*, 11th Dist. Ashtabula No. 2011-A-0066, 2012-Ohio-2830. The controlling analysis in *Johnson*

provides:

{¶50} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct * * *. If the offenses correspond to such a degree that the conduct of the defendant constituting the commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶51} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * *.

{¶52} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶53} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Citations omitted and emphasis sic.) *Johnson*, *supra*, at ¶48-51.

{¶54} In this case, appellant was convicted of robbery under R.C. 2911.02(A)(3) and petty theft under R.C. 2913.02(A)(1). In *Muncy*, *supra*, the defendant's conviction was for the same two charges. Furthermore, the facts in *Muncy* are almost identical to those in the instant matter. In *Muncy*, a K-Mart loss prevention associate observed the defendant enter the store, go to the "soft homes" department, pick up two sets of pillow cases and ultimately place them inside his pants, and then try to leave the store without paying for the items. When the loss prevention associate attempted to stop the *Muncy*

13

defendant in the store's vestibule, the defendant then used his upper body to push the associate out of his way so that he could run out the exit door.

{¶55} On appeal in *Muncy*, the defendant argued that separate sentences could not be imposed for robbery under R.C. 2911.02(A)(3) and petty theft pursuant to R.C. 2913.02(A)(1). In the first part of our analysis, this court concluded that the two crimes were allied offenses of similar import because it was feasible to commit both crimes with the same conduct. *Muncy*, 2012-Ohio-2830, at ¶39. In the second part, we held that the defendant had committed both crimes with the same animus because "his taking merchandise without payment and using his upper body to push his way out of the store to prevent detainment by the store's employee was a single transaction with a single state of mind * * *." *Id.* at ¶40. Thus, the trial court erred in not merging the offenses for purposes of sentencing, and the case had to be remanded for resentencing. *Id.* at ¶43.

{¶56} The *Muncy* analysis clearly applies to the facts of this case. That is, the series of acts appellant committed in the store, from hiding the DVDs inside his jacket to picking up the loss prevention employee so that he could exit the building, constituted a single transaction that was committed with a single state of mind. Therefore, because appellant committed two allied offenses with the same animus, the imposition of multiple sentences was plain error. For this reason, appellant's fourth assignment has merit.

{¶57} Under his next assignment, appellant challenges the legal sufficiency of the state's evidence as to both crimes. Regarding his robbery conviction, he contends that the state failed to present any evidence that he used force to evade Melody Rayel in exiting the store. As to the theft offense, appellant essentially argues that there was no proper evidence that he took the DVDs.

**{¶58}** "When reviewing a challenge to the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2dd 492 (1991), paragraph two of the syllabus. 'The pertinent inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *Id.*

**{¶59}** "A sufficiency challenge requires this court to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not permit us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 172, * * *, 485 N.E.2d 717 (1983)." *Muncy*, 2012-Ohio-2830, at ¶12-13.

**{¶60}** To obtain a conviction for robbery under R.C. 2911.02(A)(3), the state is required to prove that in committing or fleeing immediately after the commission of a theft offense, the defendant used, or threatened to use, "force" against another person. In turn, R.C. 2901.01(A)(1) defines the term "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

**{¶61}** In claiming that he did not use any force against Melody Rayel, appellant asserts that the evidence only showed that he pushed her so that he could go through the exit door. While it is true that during his trial testimony, David Hamilton stated that he saw the suspect "push" Rayel into the exit door, Rayel herself testified that appellant actually picked her up momentarily and move her to the side.

**{¶62}** However, regardless of whether Rayel was pushed or picked up, either act

15

would be sufficient to constitute an act of force. In the context of a shoplifting incident, this court has held that the "force" element of robbery under R.C. 2911.02(A)(3) is met whenever the defendant uses a part of his body in any manner to resist being detained by the security guard. *Muncy*, 2012-Ohio- 2930, at ¶19. Accordingly, even if Rayel did not sustain any serious injury in the incident, the mere fact that appellant touched her in order to avoid detainment constituted a use of force which elevated the theft offense to a robbery.

{¶63} In relation to the theft offense, Rayel's trial testimony, in and of itself, was sufficient to establish the required elements. R.C. 2913.02(A)(1) provides that the crime of theft has occurred when a person, with purpose to deprive an owner of his property, knowingly exercises control over the property without the owner's consent. As part of her testimony, Rayel expressly stated that she saw appellant place the DVDs inside his jacket and then attempt to leave the store without paying for any of the items.

{¶64} In challenging Rayel's testimony, appellant submits that it was impossible for the events to have occurred in the manner she described. For example, he asserts that Rayel could not have "shadowed" him after he left the electronics area because she never appeared on the surveillance tape. However, this type of argument only relates to the credibility of Rayel's testimony, an issue that cannot be addressed in the context of a sufficiency analysis. Moreover, a review of Rayel's entire testimony fails to reveal any inherent inconsistency which would render her version of the events totally unbelievable.

{¶65} Taken as a whole, the trial transcript demonstrates that the state was able to present some evidence as to every element of the two offenses for which appellant

16

was convicted. Accordingly, since the dismissal of the two charges on the grounds of sufficiency was unwarranted, appellant's fifth assignment is not well-taken.

{¶66} Under his final assignment, appellant asserts that his jury verdict on both counts was against the manifest weight of the evidence. In support of this assertion, he has raised three basic arguments for review.

{¶67} First, appellant maintains that he should not have been convicted because he established an alibi. As to this point, this court would note that even though Sellers Judkins testified that the soup kitchen/food pantry stayed open until 1:00 p.m., he also stated that he had handed out all of the food boxes by 12:00 p.m. Based upon this, the jury could have justifiably found that even if appellant did obtain a food box at the soup kitchen/food pantry on the day in question, he still had time to make it to the store and commit the theft offense. Other evidence demonstrated that the store employees began to observe the suspicious behavior in the electronics department shortly before 1:00 p.m.

{¶68} Second, appellant again challenges Melody Rayel's credibility. Under this assignment, he contends that, since Rayel is involved in numerous shoplifting cases as the loss prevention manager for the store, it is questionable whether she could recall the specific facts of this case. However, our review of her trial testimony fails to reveal any indication that her memory was in any way faulty. In this respect, appellant's argument on this point is pure speculation.

{¶69} Third, appellant emphasizes that the state never sought to introduce into evidence the three DVDs recovered by Hamilton or any fingerprint evidence from the DVDs. However, the trial record shows that the state presented substantial evidence

17

demonstrating that appellant was seen taking the DVDs from the display shelves in a suspicious manner, placing them inside his jacket so they could not be seen, and then attempting to exit the store without paying for the items. Given the quality of the state's evidence, it was not necessary for it to submit any additional corroborating evidence in order to convince an average juror beyond a reasonable doubt.

{¶70} "[A] 'manifest weight' challenge requires the reviewing court to play the role of a 'thirteenth juror.' *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541. A reviewing court should be cognizant of the fact that the jury is in the best position to assess the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. For an appellate court to overturn a conviction as against the manifest weight of the evidence, it must be found that '"the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."' *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717." *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶37.

{¶71} In this case, the record does not support the conclusion that the jury lost its way in assessing the credibility of Melody Rayel and the remainder of the state's four witnesses. Again, the testimony of the state's witnesses did not contain any significant inconsistencies which would warrant the total rejection of the testimony as incredulous. Moreover, since that testimony went to every element of the two charges of robbery and petty theft, the jury's guilty verdict was not against the manifest weight of the evidence.

Therefore, appellant's sixth assignment of error lacks merit.

{¶72} For the reasons discussed in this opinion, appellant's first, second, third, fifth and sixth assignments of error are without merit. His fourth assignment of error, however, is sustained. The judgment of the Ashtabula County Court of Common Pleas is therefore, affirmed in part, reversed in part, and remanded. On remand, the state retains the right to elect which crime it seeks to pursue on resentencing, i.e., either the robbery or the theft. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶25. Once the state selects the crime for which appellant shall be convicted, we direct the trial court to hold a new sentencing hearing, merge the convictions, and impose a single sentence for the elected offense.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.