**[Cite as *State v. Cooper*, 2021-Ohio-4057.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2020-P-0086 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| KEITH R. COOPER, | Trial Court No. 2019 CR 00672 |
| Defendant-Appellant. | |

# O P I N I O N

Decided: November 15, 2021
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul W. Flowers* and *Louis E. Grube*, Paul W. Flowers Co., LPA, Terminal Tower, 40th Floor, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Keith R. Cooper, appeals from his convictions and sentence for Rape and Sexual Battery in the Portage County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On July 19, 2019, Cooper was indicted by the Portage County Grand Jury for the following: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Gross Sexual Imposition, a felony of the fourth degree, in violation of R.C. 2907.05(A)(1); and two counts of Sexual Battery, felonies of the third degree, in violation of R.C.

2907.03(A)(6). A supplemental indictment was subsequently issued, charging Cooper with a second count of Rape.

{¶3} A jury trial was held on September 29 through October 5, 2020, which resulted in convictions for one count of Rape and one count of Sexual Battery. The following pertinent testimony and evidence were presented:

{¶4} C.O. was released from prison in March 2017 on parole following periods of incarceration for offenses such as burglary, theft, and possession of drugs. She admitted that she had problems with drug addiction. Upon release, her assigned parole officer was Chad Rankin. In July 2017, Rankin and fellow parole officer Cooper arrived at her residence to check on her. C.O. recognized Cooper from 2012 when she had met him while on parole. C.O. testified that the July 2017 visit went well and noted that Cooper said she "looked good."

{¶5} Approximately a week later, Cooper returned to C.O.'s residence and knocked on her door. At that time, she became scared because she had drug-related items in her house. She allowed Cooper inside and tried to hide the items. According to C.O., Cooper stated "that's not what he's there for" and said he was "hoping [she] would be naked on the couch." He stated that he needed to close the trunk of his car and when he returned, he wanted her to be laying on the couch naked. Upon reentering the house, Cooper told her to get in the shower. She refused to remove her clothes and stated that if he wanted her clothes off "you're going to have to take them off yourself and I'm not okay with that." He began to pull up her shirt while she tried to pull it down. Cooper removed her pants and pulled down her underwear. According to C.O., Cooper touched her breasts and placed his fingers in her vagina. He left the residence and as he was

2

walking away stated that he would be back.

{¶6} C.O. testified that she told various friends, family members, and a neighbor about what happened that morning. Her mother, Diana Young, testified that C.O. had called her and told her about the assault, was crying, and her "terror was palpable." C.O.'s friend, Brenda Renfro, testified that C.O. called her on July 11, screaming and stating that she had been raped by a police officer. Gregory Butler, who lives across the street from C.O., indicated that on July 11 in the early afternoon, he heard a car door, looked out his window and saw a white male with short hair and a vest indicating "PO" or "police" exit a silver sedan and approach C.O.'s house. A little while later, the man returned to his car to get something out of the trunk and then went back upstairs. C.O. came to Butler's residence about thirty minutes to an hour later, seemed upset, and asked if he had seen a man or a cop at her house, stating that the man had forced himself into her apartment and groped her. Butler indicated that he later selected Cooper from a photo lineup and stated that he was "70 percent sure" he was the man at C.O.'s house.

{¶7} C.O. testified she was initially afraid to report the crime because she does not trust police officers. She subsequently told her counselor during a session for drug-related issues, who reported the incident to Stephen Lyden, a Newton Falls Police Department officer. He took a report that indicated C.O. had been assaulted the week of July 11 at her residence and then passed the matter to detectives. C.O. testified that she did not recall the statement she gave to Lyden or exactly what she told her neighbor but indicated that although she had drug addiction problems, it did not affect her ability to recall the assault by Cooper. In addition to reporting the crime, she pursued a civil lawsuit with other victims.

Case No. 2020-P-0086

{¶8} Chad Rankin testified that, while supervising C.O., he began having difficulty getting in contact with her and she called crying and said she "had not been right" since Cooper raped her. Rankin was unaware of any business Cooper had with C.O. where he would have visited her residence on his own.

{¶9} L.M. testified that Cooper had been her parole officer in June 2017 and made inappropriate comments to her about her undergarments and touched her buttocks when she went to his office to meet with him. According to L.M., when Cooper came to her family's home to complete paperwork, he touched her breasts and buttocks. Her mother stated she observed the assault but had previously told detectives she had not seen anything. L.M. did not initially disclose this behavior when asked by parole authorities but later provided the information to a state trooper conducting an investigation into Cooper's activity.

{¶10} K.R. testified that after her release from prison in March 2017 for tampering with evidence, Cooper was assigned as her parole officer. During their first meeting in May 2017, Cooper came to K.R.'s home where she lived with her family. While Cooper and K.R. were alone in her bedroom, Cooper looked through her underwear drawer, and when leaving said "[do] your panties match your bra?" She testified that when he visited her house a second time, he kissed her on the mouth. She had been nervous at that time because she had fake urine in her room in order to pass a potential drug test.

{¶11} According to K.R., on a third visit to her home, Cooper unzipped his pants and exposed himself. She performed oral sex because she did not "want to have sex with him and * * * want[ed] to get him out of [her] mom's house." She stated: "I knew what time it was when he pulled his pants down. Maybe I shouldn't know what time it was, but

4

I've been in prison so I've been through this thing before and I was just pressured." Linda Sedar, K.R.'s mother, confirmed that Cooper met with her in her room and that K.R. had stated Cooper was "coming onto her."

{¶12} K.R. testified that she was supposed to meet with her parole officer once every three months but Cooper came to her home three times in one month. K.R. testified that Rankin replaced Cooper as her parole officer, she informed him Cooper had been acting "funny," and she was asked to speak with Rankin's supervisor. K.R. spoke via telephone with Alice Barr, the Adult Parole Authority Regional Administrator for the Akron Region, and told her about the underwear and text messages sent to her by Cooper. K.R. did not inform Barr about the oral sex because she was with her boyfriend at the time of the call and was embarrassed and ashamed.

{¶13} K.R. told a corrections officer about the incident several months later when she was incarcerated in April 2018. According to K.R., at that time she was detoxing from drugs, and "kept thinking about [the abuse] all the time." Michael Cipriano of the Streetsboro Police Department interviewed K.R. who informed him she performed oral sex on Cooper in her bedroom and felt she had to do it because he "had control over her life." K.R. admitted that during that interview she told Cipriano that she felt she should be released from jail for her current charges if she cooperated but that she did not receive any favors for giving a statement against Cooper. She noted that, although she was involved in a civil suit against Cooper, the attorney in that suit had initiated contact with her.

{¶14} Cooper, who has been a parole officer since 2003, testified that he met with C.O. in his role as a parole officer and went with Rankin to her home. At that time, he

5

spoke with her about another individual who was selling drugs that may have been causing deaths in the area. According to Cooper, Kent Police Department officers expressed concern with this drug dealer and asked Cooper to meet with C.O. to get more information. He went to C.O.'s home to speak to her about this issue, she did not give any helpful information, and he left after about 10-15 minutes. In relation to L.M., he testified that he went to her residence, looked around, and had her sign paperwork. As to K.R., Cooper testified that he visited her home on two occasions, which corresponded with his notes of the visits. When in her room, he opened her dresser drawers because she was a drug user. He said the visits were normal and nothing was out of the ordinary. He denied the allegations of sexual contact made by all three women.

{¶15} At the conclusion of its case, the State moved to dismiss one count of Sexual Battery. The jury found Cooper guilty of one count of Rape, for the offense against C.O., and Sexual Battery of K.R., and not guilty of one count of Rape and Gross Sexual Imposition.

{¶16} A sentencing hearing was held on October 26, 2020. The court ordered Cooper to serve consecutive terms of imprisonment of eight years for Rape and four years for Sexual Battery. The court stated its findings supporting the consecutive sentences and noted "these were separate incidents, although, again, a course of conduct you chose to perpetuate against these women." This sentence was memorialized in an October 27, 2020 Entry on Sentence.

{¶17} Cooper timely appeals and raises the following assignments of error:

{¶18} "[1.] The trial court committed plain error to the substantial prejudice of the defendant by denying the motion to remove juror number 20 for cause.

6

Case No. 2020-P-0086

{¶19} "[2.] Defendant's counsel was constitutionally ineffective by failing to utilize a peremptory challenge to remove juror number 20.

{¶20} "[3.] The jury's guilty verdicts are against the manifest weight of the evidence.

{¶21} "[4.] The trial court erred by imposing consecutive sentences because the record clearly and convincingly does not support a finding that multiple offenses were committed as a course of conduct."

{¶22} In his first assignment of error, Cooper argues that the trial court erred in overruling the challenge for cause to juror number 20 and permitting him to serve on the jury as he expressed disagreement with the presumption of innocence and demonstrated a predisposition to finding Cooper guilty based upon the number of accusers.

{¶23} "The Sixth Amendment to the United States Constitution guarantees a defendant the right to a trial by fair and impartial jurors." *State v. Oliver*, 11th Dist. Portage No. 2010-P-0017, 2012-Ohio-122, ¶ 37. When counsel challenges a juror for cause, "[t]he ultimate question is whether the 'juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed.'" (Citations omitted.) *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 140. The trial court's ruling on a challenge for cause is reviewed for an abuse of discretion. *State v. Gipson*, 11th Dist. Lake No. 2018-L-093, 2019-Ohio-1165, ¶ 12; *State v. Williams*, 6 Ohio St.3d 281, 288, 452 N.E.2d 1323 (1983) ("a court's determination in a *voir dire* proceeding of a prospective juror's fairness and impartiality constitutes reversible error only when it can be shown that the court, in conducting the examination, clearly abused its discretion"). However, a plain error

7

standard is applied where a court overrules objections for cause and the defendant fails to "exhaust his peremptory challenges." *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 67. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶24} As an initial matter, while appellant argues that juror number 20 was the juror challenged for cause who was then not removed with a peremptory challenge, the State contends that the juror defense counsel intended to request be removed for cause was either juror number 7 or 92, neither of whom was ultimately was placed on the jury. The precise juror defense counsel sought to remove for cause is unclear because he did not state the name of the juror when seeking to strike him for cause; rather, counsel asked "Who is the one that didn't have the ability to understand that he is presumed innocent right now?" and the court overruled the challenge without mentioning a juror name or number. Discussions regarding the presumption of innocence took place with multiple jurors, as will be outlined below. While it is the responsibility of the appellant to demonstrate error supported by the record, in the interest of justice, we will address this argument as it relates to each of the aforementioned jurors.

{¶25} During voir dire, defense counsel discussed the presumption of innocence and asked the prospective jurors: "Is there anybody here that says, you know what, you

8

give these criminals too much. There should be no presumption of innocence. Anybody?" Counsel then recognized juror number 20, who presumably made a non-verbal indication of agreement, and counsel gave an example of how people have a tendency to presume guilt in certain circumstances. After further explanation about how it is human nature to believe one is guilty when they appear in court, defense counsel stated: "Man, you said that if you had to make a decision now he's probably guilty, right?" The transcript references a "juror" as responding, although it does not identify the juror. Cooper's brief indicates these statements were made by juror 20. The juror responded, "I did" and when asked why, he stated "it's the first thing I thought of" and noted that there were "three victims." Defense counsel then indicated "You understand that for you to say that, you do understand it's wrong, correct?" The juror responded "absolutely." Defense counsel then asked "Because he has the presumption of innocence, right?" to which the juror responded "yes."

{¶26} Later in voir dire, defense counsel inquired whether juror number 7 would find Cooper guilty if she had to deliberate now and she responded, "I don't know enough to reply. Well, I don't." Counsel asked if others agreed and juror 92 responded affirmatively but followed up with "I guess he's innocent if I had to call it right now."

{¶27} When the judge requested challenges for cause at the conclusion of voir dire, defense counsel stated, "Who is the one that didn't have the ability to understand that he is presumed innocent right now?" The court responded, "I think you made it clear. Overruled." With peremptory challenges, the State removed three jurors, as did the defense, who removed, inter alia, juror number 7. After the State indicated it passed and the defense removed its third juror, the court indicated: "He's already done. You used

9

your third. You have your fourth." The court reporter then indicated she could not hear. The prosecutor stated, "The third was agreed to. * * * He used three." The transcript then states "(I cannot hear them at side-bar.)" The court indicated, "You passed. You're done." Defense counsel stated "Two skips in a row then we're done." The alternates were then chosen. Cooper concedes defense counsel did not use the fourth available peremptory challenge.

{¶28} Courts in Ohio have clearly indicated that where all peremptory challenges are not utilized, there is no constitutional violation or prejudice due to the trial court's denial of a request to remove a juror for cause. As this court has explained, "in order for a constitutional violation to occur, the defendant must have used all of his peremptory challenges and be able to demonstrate that one of the jurors seated was not impartial and that juror in question must have been challenged for cause," since the jury panel composition must be affected by the trial court's error. *Gipson*, 2019-Ohio-1165, at ¶ 13; *State v. Getsy*, 84 Ohio St.3d 180, 191, 702 N.E.2d 866 (1998) ("error in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges"). Prejudice occurs when the defendant has "fewer peremptories than the law provides" due to the court's overruling of a challenge for cause. *State v. Powell*, 9th Dist. Summit No. 28170, 2017-Ohio-5629, ¶ 41, citing *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). *See also State v. Mayse*, 2017-Ohio-1483, 88 N.E.3d 1208, ¶ 13 (3d Dist.) (where counsel did not seek to use all peremptory challenges, "he has not shown that there was a constitutional violation by a denial of a challenge for cause"). Here, Cooper concedes that not all of his peremptory challenges were used. Thus, there would be no prejudice from the court's decision not

10

to remove either juror 7 or juror 20 for cause since this act did not prevent Cooper from utilizing all of his allotted challenges.

{¶29} Further, and as will be discussed in more detail in the second assignment of error, the pertinent jurors, while indicating some confusion or general discontent with the presumption of innocence, did not state they would fail to apply such presumption as required by law. As indicated by the trial court's statement, the court appeared to believe defense counsel's questions and explanation of innocence until proven guilty, and the jurors' responses sufficiently demonstrated their understanding of these concepts and acceptance of what the law requires. The jurors in question generally indicated they understood the law and/or that they could be fair in applying the law. Failure to remove them for cause was not plain error.

{¶30} The authority cited by Cooper in support of the argument that the juror should have been removed is distinguishable from this matter. In *State v. Siegman*, 6th Dist. Lucas No. L-01-1300, 2002-Ohio-3576, ¶ 42-52, the trial court chose to remove a juror who voiced a "prejudiced" opinion of the defendant but the appellate court addressed only whether the statements impacted the other jurors, not whether all potential jurors making similar statements must be removed for cause or whether disagreement with or misunderstanding of principles of law would warrant removal. Similar issues apply in *State v. Strong*, 119 Ohio App. 31, 196 N.E.2d 801 (5th Dist.1963) where the juror stated she could not be fair. In *Hankison v. Brown*, 3 Ohio App.3d 249, 444 N.E.2d 1059 (10th Dist.1981), the juror specifically stated that she could not be fair and impartial in the type of case before the jury. That did not occur in the present matter.

{¶31} The first assignment of error is without merit.

11

{¶32} In his second assignment of error, Cooper argues that trial counsel was ineffective by failing to utilize the remaining peremptory challenge to remove juror number 20, citing his rationale in the first assigned error relating to the juror's bias and prejudice caused to Cooper resulting from his inclusion on the jury.

{¶33} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances. * * * Judicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 688-689. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶34} As noted above, there is a lack of clarity regarding the juror that defense counsel intended to have removed for cause. Presuming it was juror 7, counsel utilized a peremptory challenge and thus there is no issue of ineffectiveness. Juror 92 did not reach the jury so no issue arises here as well. We will further address ineffectiveness as to the failure to remove juror 20.

{¶35} Courts have recognized the deference given to trial counsel's strategy decisions regarding which jurors to seat. "An appellate court does not second-guess trial strategy decisions such as those made by counsel during voir dire." *State v. Hall*, 11th

12

Dist. Lake Nos. 2019-L-027 and 031, 2019-Ohio-4000, ¶ 28. "Voir dire is largely a matter of strategy and tactics. * * * Decisions on the exercise of peremptory challenges are a matter of experience and trial technique and are a part of that strategy. * * * Defense counsel, who observed the jurors firsthand, is in a much better position to determine whether a prospective juror should be peremptorily challenged." *State v. Grega*, 11th Dist. Ashtabula No. 2012-A-0036, 2013-Ohio-4094, ¶ 33, citing *State v. Cruz*, 12th Dist. Butler No. CA2012-03-059, 2013-Ohio-215, ¶ 40; *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 64 ("The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts.") (citation omitted).

{¶36} We recognize that a juror, potentially juror 20, questioned the presumption of innocence, indicated that he believed the defendant was probably guilty at the time of voir dire because it was the "first thing [he] thought of," and noted there were multiple victims. However, defense counsel conducted an extensive discussion about this topic, the juror indicated that he understood it was wrong to say Cooper was probably guilty before hearing evidence, and then responded affirmatively to the question "Because he has the presumption of innocence, right?" From this line of questioning, it appears that the juror may not have understood the presumption of innocence rather than intended to ignore the law and indicated understanding of the presumption once it was explained. These statements alone do not mandate removing a juror. *See State v. Lundgren*, 73 Ohio St.3d 474, 483, 653 N.E.2d 304 (1995) (a juror's statements that a defendant may be guilty or that he has difficulty with the state having the burden of proof do not require

13

removal when the juror agrees to apply the law). While additional follow-up questions were not asked, such as whether the juror could fairly apply the presumption of innocence, it appears that the juror recognized his feelings were not what the law dictates. Given the strong deference to be given to counsel relating to voir dire, counsel was entitled to decide from this questioning whether placing this individual on the jury would be detrimental to Cooper's defense.

{¶37} Cooper emphasizes that counsel sought to remove juror 20 for cause but then failed to utilize a peremptory to strike the same juror, a position he views as contradictory. It may be the case that defense counsel determined, considering other available jurors, that this juror was still preferable although removal for cause would have given him more potential leeway in selecting the jury. This is precisely why we do not second-guess matters of trial strategy; this court cannot determine which jurors were viewed as more beneficial based on the defense's strategy. A decision to not utilize a peremptory challenge to remove a juror where defense counsel had unsuccessfully sought to have the juror removed for cause has been found to be a valid exercise of trial strategy. *Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶ 97-99.

{¶38} Further, "when the defendant asserts that his trial counsel allowed a biased juror to be impaneled, his claim of ineffective assistance can only succeed if there is a showing of actual bias against him." *Grega*, 2013-Ohio-4094, at ¶ 36; *Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, at ¶ 67. Here, we do not find a showing that the juror was actually biased against Cooper and as outlined above, the record does not indicate that the juror refused to apply the proper standard once it was explained to him. Cooper's argument that there is a reasonable probability the jurors returned a verdict of

14

guilty because of this juror is not supported by anything in the record.

{¶39} The second assignment of error is without merit.

{¶40} In his third assignment of error, Cooper argues that the verdicts were against the weight of the evidence, emphasizing the inconsistent statements of K.R. and C.O.

{¶41} "[W]eight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶42} To convict Cooper of Rape, the State was required to prove, beyond a reasonable doubt, that Cooper did "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). For Sexual Battery, the State was required to prove that he did "engage in sexual conduct with another * * * when * * * [t]he other person is in custody of law * * * and the offender has supervisory or disciplinary authority over the other person." R.C. 2907.03(A)(6).

{¶43} As to the offense of Sexual Battery, K.R.'s testimony demonstrated that

15

Cooper engaged in sexual conduct with her while she was on parole and while he had supervisory authority over her. Cooper does not dispute that such testimony would satisfy the elements of the offense but contends that the conviction was against the weight of the evidence because K.R. gave inconsistent testimony and statements about the incident, failing to disclose the oral sex initially, bringing it up only when she was suffering from drug withdrawal and to use as a bargaining chip to get out of jail.

{¶44} As an initial matter, we emphasize that, "[s]ince the jury is in the best position to assess credibility, we generally decline to second guess its credibility determinations." *State v. Tiggett*, 11th Dist. Trumbull No. 2018-T-0036, 2019-Ohio-1715, ¶ 34. Here, it is accurate that K.R. did not initially disclose the oral sex when she spoke with Barr about her interactions with Cooper. In her testimony, she gave an explanation for this, stating she was with her boyfriend when speaking to Barr and that she was embarrassed. Further, she testified that although she did make a statement while in jail that she should be released in return for coming forward with allegations against Cooper, she further explained that she did not expect to receive such a deal and that she spoke about the oral sex because she could not stop thinking about the incident and it was unfair for Cooper not to be punished for his conduct. This is a plausible explanation for K.R.'s inconsistent or incomplete description of the events and one that the jury clearly chose to accept in evaluating K.R.'s credibility. *See State v. Carswell*, 6th Dist. Sandusky No. S-20-001, 2021-Ohio-3379, ¶ 51 (where cross-examination "arguably revealed some inconsistencies in [a witness'] testimony, the jury's resolution of factual and credibility disputes in this case against appellant does not equate to a finding that the jury's verdict was against the manifest weight of the evidence").

16

{¶45} As to C.O., her testimony demonstrated Cooper engaged in sexual conduct with her against her wishes and without her permission. C.O.'s friends and family testified she had told them about the incident soon after it happened and seemed upset. C.O.'s neighbor observed a man he was able to identify as Cooper being present at the home on the date of the incident. C.O. attributed her initial failure to report the incident to distrust of police, which, for reasons stated above, could have been accepted by the jury as a reasonable explanation. Further, while Cooper emphasizes her "odd" testimony, such as denying that she had stated she did not feel good about herself or conflicting statements relating to her inability to recall information, these do not provide grounds for a finding that the verdict was against the weight of the evidence.

{¶46} As to both the convictions relating to K.R. and C.O., Cooper also points to the civil suit as part of the motivation for their allegations. However, K.R. testified that she did not seek to file a suit and was contacted by an attorney while in jail. C.O. gave similar testimony, including that L.M. was the one to initiate contact with a civil attorney. Whether they were motivated to bring false allegations would again be a credibility issue and we find no reason to second guess the jury's determination that their testimony was not false. Cooper also takes issue with the fact that the victims knew each other and could have "coordinated their efforts." The fact that multiple victims in the same county who have all been imprisoned at the same time know each other is not particularly noteworthy or unexpected, nor was there any testimony or evidence to indicate they had conspired together to make up false allegations.

{¶47} The authority cited by Cooper in support of his contention that reversal is warranted is distinguishable. In *State v. Moore*, 2018-Ohio-1825, 112 N.E.3d 76 (8th

17

Dist.), the court reversed the defendant's conviction for Sexual Battery as against the manifest weight of the evidence where the victim gave conflicting details in her testimony, had an inability to remember the nature of the events, could not remember simple details regarding the assault and sequence of events, and DNA evidence from the scene did not substantiate her story. In the present matter, the victims' testimony generally showed an ability to remember the details and nature of the events and their failure to initially disclose the abuse was explained by the victims. We do not find this to rise to the level of a case where the jury clearly lost its way in convicting the defendant.

{¶48} The third assignment of error is without merit.

{¶49} In his fourth assignment of error, Cooper argues that the trial court erred by ordering him to serve consecutive sentences as the offenses were not part of a course of conduct.

{¶50} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, or * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b).

{¶51} "Under R.C. 2929.14(C)(4), a sentencing court is required to make three distinct findings in order to require an offender to serve consecutive prison terms: (1) that consecutive sentences are 'necessary to protect the public from future crime or to

18

punish the offender'; (2) that consecutive sentences are 'not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public'; (3) 'and * * * also' that one of the circumstances described in subdivision (a) to (c) is present." (Citation omitted.) *State v. Claar*, 11th Dist. Portage No. 2019-P-0091, 2020-Ohio-1330, ¶ 11. The applicable factor found by the trial court here was R.C. 2929.14(C)(4)(b): "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶52} The trial court made the applicable findings as required by R.C. 2929.14(C)(4). Cooper argues, however, that the record establishes the offenses were not committed as a course of conduct, noting that the crimes were "factually unrelated," occurred in different counties, and Cooper stood in different roles of authority to the victims.

{¶53} It has been held that "'some connection, common scheme, or some pattern or psychological thread that ties' offenses together can establish a single course of conduct." *State v. Summers*, 2d Dist. Darke No. 2013 CA 16, 2014-Ohio-2441, ¶ 14, citing *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus; *see also State v. Squires*, 8th Dist. Cuyahoga No. 110059, 2021-Ohio-2035, ¶ 11; *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 144 ("a course of conduct may be established by factual links, including time, location, weapon, cause of death, or similar motivation") (citation omitted).

19

Case No. 2020-P-0086

{¶54} In the present matter, the record demonstrated factual links and a similar motivation tying the offenses together, i.e., that Cooper used his authority as a parole officer to initiate conduct with the women and commit acts of sexual abuse. Slight differences in the facts of the crimes does not preclude a finding of a course of conduct; using his position of employment and authority in a similar pattern to commit the same types of crimes against multiple victims can certainly be viewed as a course of conduct. *State v. Jewell*, 3d Dist. Auglaize No. 2-20-11, 2021-Ohio-32, ¶ 17 (a course of conduct finding was supported where the defendant sexually abused three minor children on multiple occasions over several years "exploiting their vulnerabilities based on age, lack of knowledge, and inability to engage in self-protection"); *see also State v. Bulger*, 6th Dist. Sandusky No. S-20-009, 2020-Ohio-4602, ¶ 16 (sexual abuse committed against both of the defendant's stepdaughters over several years constitutes a course of conduct). The fact that the crimes were committed in different counties has little bearing on whether they were part of a course of conduct and such an argument has been previously rejected. *Summers* at ¶ 14 (upholding the trial court's finding that there was a course of conduct when crimes were committed in two separate counties).

{¶55} Cooper argues that a course of conduct should not be found since he was not the parole officer for all victims. Cooper was K.R.'s parole officer and, while he was not C.O.'s assigned parole officer, he accompanied Rankin on a visit to C.O.'s home and she was aware he was a parole officer, which supports a conclusion that he used his status to facilitate the crime. Further, a third allegation was made with similar conduct by L.M., who was under Cooper's charge. Although he was acquitted of this offense, "the court may consider information beyond that strictly related to the offense(s) of which a

defendant is convicted," including "charges of which the offender is ultimately acquitted." *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 124; *Summers* at ¶ 15. Based on the foregoing, we cannot clearly and convincingly find that the record fails to support the trial court's findings.

{¶56} The fourth assignment of error is without merit.

{¶57} For the foregoing reasons, Cooper's convictions and sentence in the Portage County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


MARY JANE TRAPP, P.J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

Case No. 2020-P-0086