[Cite as *State v. Perkins*, 2025-Ohio-634.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TODD W. PERKINS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0054**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2019 CR 356

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Edward A. Czopur*, Mahoning County Assistant Prosecuting Attorney, and *Atty. Danielle L. Menning*, Columbiana County Prosecutor's Office, Special Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. John P. Laczko*, John P. Laczko, LLC, for Defendant-Appellant.

Dated: February 26, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Todd W. Perkins, appeals from a Mahoning County Common Pleas Court judgment convicting him of rape and gross sexual imposition (GSI). He was sentenced to a total of 20 years to life in prison. Appellant presents five assignments of error on appeal.

{¶2} Appellant asserts that the trial court erred by: (1) failing to excuse a prospective juror for cause; (2) failing to declare a mistrial after a juror read a newspaper article; and (3) declaring the child-victim, C.P., competent to testify. He further contends that: (4) sufficient evidence does not support his convictions and they are against the manifest weight of the evidence; and (5) cumulative errors violated his right to a fair trial.

{¶3} For the following reasons, all of Appellant's assignments of error lack merit. The prospective juror was removed from the jury with a peremptory challenge and defense counsel had peremptory challenges remaining. This results in a plain error review and plain error did not occur. The court did not abuse its discretion by failing to grant a mistrial when a juror read a newspaper article because the court properly dismissed the juror and the record fails to show that the juror tainted the rest of the jury. Further, C.P. was over the age of 10 when she testified and no competency hearing was necessary.

{¶4} Finally, we hold that sufficient evidence supported the verdict and it was not against the manifest weight of the evidence. Consequently, Appellant's cumulative error assertion lacks merit because his prior assignments of error lack merit.

## PROCEDURAL HISTORY

{¶5} Appellant was originally indicted on January 26, 2017 for first-degree felony rape and third-degree felony GSI involving C.P., his less than five-year-old daughter, in violation of R.C. 2907.02(A)(1)(b), R.C. 2907.02(B), R.C. 2907.05(A)(4) and R.C. 2907.05(C)(2). These charges were dismissed after another indictment was issued against Appellant for the same rape and GSI charges involving C.P., and additional rape and GSI charges involving another of Appellant's minor daughters.

{¶6}    Appellant's counsel filed a motion to sever the trials, but the trial court overruled the motion and a motion for reconsideration.  Appellant ultimately entered no contest pleas after the court denied his counsel's subsequent request to sever trials.

{¶7}    Appellant filed a motion to withdraw his pleas, which the court denied, and he was sentenced to a total of 15 years in prison on his no contest pleas.  He filed an appeal and asserted that the court erred by denying his motion to sever trials.

{¶8}    On August 11, 2022, we issued an Opinion and Judgment Entry finding merit to Appellant's assignment of error.  *See State v. Perkins*, 2022-Ohio-2841 (7th Dist.).  We reversed the court's judgment, vacated its judgment of conviction and sentence, and remanded the case for the trial court to grant Appellant's motion to sever the trials.  *Id.*

{¶9}    On December 1, 2023, Appellant, through counsel, filed a motion to join the State's 2020 motion to determine the competence of C.P.  Appellant asserted that even though C.P. was 11 years old at trial, the court should determine her competence since she was only four years old when she made the allegations against him.

{¶10}  The State opposed the motion, asserting that when it filed its motion, C.P. was seven years old.  The State noted that at the time of filing, children under the age of ten were presumed incompetent under Evid.R. 601.  The State explained that as of July 1, 2020, Evid.R. 601 was amended to remove that presumption.  The State therefore moved to withdraw its previous motion to determine C.P.'s competency.

{¶11}  On January 31, 2024, the court held a final pretrial and competency hearing. (Final Pretrial Tr., 3).  The court excluded Appellant from the hearing.  The court explained to counsel that it would ask C.P. only whether she was able to recall the facts and circumstances of the incidents.  (Final Pretrial Tr., 3).  Defense counsel cited caselaw showing that the court should ask a series of questions to determine if the child was able to recall the events and relay her impressions about them without being previously coached or guided.  (Final Pretrial Tr., 3-4).

{¶12}  The court responded that it did not want to discuss the facts and circumstances of the case since Appellant was not present.  (Final Pretrial Tr., 5).  The court informed counsel that it would ask C.P. "if she is being totally honest this morning and I'm going to ask her if she is able to recall facts and circumstances regarding this

matter on her own." (Final Pretrial Tr., 6).

{¶13} The court administered the oath to C.P. and asked if she knew the difference between right and wrong. (Final Pretrial Tr., 7). C.P. responded that she did. (Final Pretrial Tr., 7). The court asked if she was "able to recall the facts and circumstances regarding the matter that's going to go to trial next week on your own?" (Final Pretrial Tr., 7). C.P. responded that she "believed so," and after a sidebar with counsel, the court clarified C.P.'s response. (Final Pretrial Tr., 8). The court asked, "what we need to know is, if you can tell them on your own what happened without somebody like telling you what to say." (Final Pretrial Tr., 9). C.P. responded, "Yes, I can." (Final Pretrial Tr., 9). The court asked no further questions.

{¶14} A jury trial was held and C.P. testified for the State, as well as M.H., C.P.'s mother. Mahoning County Sheriff's Department Detective Robert Smith also testified, as did Nurse Practitioner Janet Gorsuch who treated C.P. at Akron Children's Hospital (ACH), and Courtney Wilson, a social worker at the Child Advocacy Center (CAC) at ACH. Rosemary Pastore, a long-time friend and former girlfriend of Appellant testified on behalf of Appellant, and Appellant himself testified.

{¶15} The jury convicted Appellant on both counts as charged in the indictment. The court held a sentencing hearing and on April 25, 2024, issued a judgment entry sentencing Appellant to a total of 20 years to life in prison. The court sentenced Appellant to 15 years to life imprisonment on the rape conviction, and five years in prison on the GSI conviction. The court ordered the 5-year sentence on the GSI to run consecutively to the 15 years to life imprisonment sentence.

{¶16} On May 23, 2024, Appellant filed a notice of appeal and asserts five assignments of error in his appellate brief.

{¶17} In his first assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN FAILING TO EXCUSE JUROR SALLAZ FOR CAUSE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

{¶18} Below is the relevant dialogue between defense counsel and Prospective Juror Sallaz during voir dire:

MS. MARO[1]:  Is there anybody who right now believes in their heart and soul they couldn't vote not guilty because they think Mr. Perkins must have done something if he's sitting here?

So that presumption of innocence - - Mrs. Sallaz, you're looking skeptical.

PROS. JUROR SALLAZ:  I would have to - - I don't know if I could say he's not guilty.  I - - I haven't heard any evidence.  Even if - - you know, I just honestly cannot - - you know, there has to be some reason he is here, whether he's guilty or not guilty.

But I cannot sit here and honestly say he's not guilty, and I can't sit here and honestly say he is guilty.

MS. MARO:  Okay.  And I appreciate you candor.  I really do.

And again, we can't emphasize it enough, there's no wrong answer here. We just need your honest answer and feelings.

So as you sit here –as you're sitting here right now, you don't presume he's innocent?

PROS. JUROR SALLAZ:  I don't presume he's innocent, and I don't presume he's guilty, either.

But he's - - he's here.  There has to be some reason he is here, whether he's guilty or he's not guilty.

---

[1] It is noted that Attorney Lynn Maro was one of two defense counsel during the trial in this case.  She and co-counsel John Juhasz withdrew from this case on June 18, 2024.  Attorney Maro was subsequently elected to the position of Mahoning County Prosecutor and Attorney Juhasz became the Chief of the Criminal Division with the Mahoning County Prosecutor's Office.  Upon severance of the counts, Prosecutor Maro filed a notice of conflict with the trial court, request to withdraw as counsel, and notice of intent to appoint a special prosecutor.  *See State v. Perkins,* Mahoning County C.P. No. 2019CR00356 (Jan. 15, 2025 Notice).  Prosecutor Maro filed a notice of appointment of a special prosecutor on January 29, 2025. *Id.*  (Jan. 29, 2025 Notice)

Case No. 24 MA 0054

MS. MARO:  So if during – if I understand you, and please correct me if I'm wrong, during the course of this trial you're starting out with the State sort of having a leg up?  He's here for a reason.

PROS. JUROR SALLAZ:  Correct.

MS. MARO:  Okay.  So the Judge gave us an instruction that he's presumed innocent.

PROS. JUROR SALLAZ:  Correct.

MS. MARO:  And that the State has the burden to prove beyond a reasonable doubt before you could ever reach a finding of guilty.

If the State starts with that leg up, that something must have happened here, are you able to then view that evidence in a vacuum of he didn't do anything?  They have to prove everything?

PROS. JUROR SALLAZ:  Yes.  It would have to - - there- - the evidence - - I would have to hear the evidence, both.

MS. MARO:  But as we start, you can't afford him that presumption of innocence?

PROS. JUROR SALLAZ:  I cannot, no.

(Trial Tr., 111-113).

{¶19}  Appellant asserts that the court violated his federal and state constitutional right to a fair trial with unbiased and unprejudiced jurors when it failed to remove Prospective Juror Sallaz for cause.  He cites R.C. 2313.17(B)(9) as the ground under which Prospective Juror Sallaz should have been removed.  R.C. 2313.17(B)(9) provides that good cause exists for removing a prospective juror when the juror "discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court."  R.C. 2313.17(B)(9).

**{¶20}** Appellant cites his counsel's questioning of Prospective Juror Sallaz and the trial court's denial of his counsel's challenge for cause. (Trial Tr., 111-113). He notes that because his counsel was unable to use a challenge for cause, they had to use a peremptory challenge that could have been used to excuse another prospective juror.

**{¶21}** Appellee submits that abuse of discretion is the proper standard of review of a trial court's decision to deny a challenge for cause. Appellee cites *State v. Cooper*, 2021-Ohio-4057 (11th Dist.) as similar to the instant case. Appellee asserts that while Prospective Juror Sallaz initially stated she could not apply the presumption of innocence to Appellant, her later statement that "it makes sense," confirmed clarity of the burden of proof and her ability to apply the presumption. Appellee also cites Prospective Juror Sallaz's indications that she would follow the court's instructions of law and she would base her verdict solely on the evidence presented at trial. (Trial Tr. 16, 18-19). Appellee quotes the following portion of the transcript of voir dire of the jury:

> MS. MARO: But if we don't ask one question, if we don't call one witness, if we do nothing in this trial, are you still able to hold the State to their burden?
>
> PROS. JUROR FOX: No.
>
> MS. MARO: How come?
>
> PROS. JUROR FOX: To hear both sides.
>
> MS. MARO: And that's the natural human trait. Especially if you've raised kids, you want to hear everybody's side. You want to hear everybody's input.
>
> So if we choose to do nothing, not ask one question, not put one exhibit in, do nothing, you're saying you're going to assume he did something wrong?
>
> PROS. JUROR FOX: No.
>
> MS. MARO: Are you going to presume he's guilty?
>
> PROS. JUROR FOX: No.

MS. MARO:  Then why did you say no, I want to hear from both sides?

PROS. JUROR FOX:  Because they're trying to prove him guilty.

MS. MARO:  Correct.

PROS. JUROR FOX:  And you're going to try to prove him innocent.

MS. MARO:  Incorrect.

We have no – nothing to prove.  Under this Constitution, the defense has no burden of proof.

PROS. JUROR FOX:  Okay.

MS. MARO:  This isn't like a football game, soccer game, baseball game, how many points did they score versus how many points we score.

They either prove their case, or they don't.

PROS. JUROR FOX:  Okay.

MS. MARO:  Make sense?

Does that make sense to you?

**PROS. JUROR SALLAZ [not Pros. Juror Fox]:  That makes sense.**

(Trial Tr., 114-116) (emphasis added).

**{¶22}**  The Sixth Amendment to the United States Constitution mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"  The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors.  *Duncan v. Louisiana,* 391 U.S. 145 (1968).  The Ohio Constitution guarantees the right to "a speedy public trial by an impartial jury."  Ohio Const., art. I, § 10.

Case No. 24 MA 0054

**{¶23}** The standard of appellate review for a trial court's ruling on a challenge for cause is abuse of discretion. *State v. Williams*, 6 Ohio St.3d 281, 288 (1983). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶24}** Courts apply a plain error standard where a court overrules objections for cause and the defendant fails to "exhaust his peremptory challenges." *State v. Cooper*, 2021-Ohio-4057 (11th Dist.), citing *State v. Trimble*, 2009-Ohio-2961, ¶ 67. Plain error is found only in exceptional cases and occurs when "'it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" *Cooper* at ¶ 23, quoting *State v. Issa*, 2001-Ohio-1290, ¶ 8.

**{¶25}** The *Cooper* case cited by Appellee is similar to the instant case. In *Cooper,* the defense moved the court to remove juror number 20[2] for cause after he non-verbally agreed in voir dire that there should be no presumption of innocence. *Id.* at ¶ 25. Juror number 20 also responded, "I did," after defense counsel asked who had stated that the defendant was probably guilty if the juror had to decide at that moment. *Id.* When defense counsel asked for an explanation, juror number 20 stated it was the first thing he thought because there were three victims. *Id.* Defense counsel asked if he knew he was wrong and juror number 20 responded, "absolutely." *Id.* Defense counsel explained that the juror was wrong because the defendant was entitled to the presumption of innocence and juror number 20 agreed. *Id.*

**{¶26}** Defense counsel sought to remove juror number 20 for cause and the court overruled the challenge. *Cooper* at ¶ 27. The defense did not exercise one of its peremptory challenges to remove juror number 20 even though he had peremptory challenges remaining when the jury was seated. *Id.* at ¶ 27-28.

**{¶27}** The Eleventh District relied on its prior holding in *State v. Gipson*, 2019-Ohio-1165, ¶ 13 (11th Dist.) that "error in the denial of a challenge of a juror for cause

---

[2] The court in *Cooper* noted that there was some discrepancy as to which juror the defense sought to remove for cause because defense counsel did not state the name of the juror when moving to remove the juror for cause. *Id.* at ¶ 24. The court noted that discussions were had with many jurors after defense counsel asked which juror stated that he did not have the ability to understand that the defendant was at that moment presumed innocent. *Id.* The court held that while it is the responsibility of the appellant to provide such information to the court, it would address his argument as to the jurors identified in the brief. *Id.*

cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges." *Cooper* at ¶ 28. The *Cooper* Court also relied on the Third District's holding in *State v. Mayse*, 2017-Ohio-1483, ¶ 13 (3d Dist.), that "where counsel did not seek to use all peremptory challenges, 'he has not shown that there was a constitutional violation by a denial of a challenge for cause.'" *Id.*

**{¶28}** In the instant case, the record shows that defense counsel did not exercise all of their peremptory challenges. (*See* Trial Tr., 215). After exercising a peremptory challenge to remove Prospective Juror Sallaz, the court asked defense counsel if they wished to exercise a peremptory challenge for either Prospective Juror Jaskowick or Prospective Juror Franko. (Trial Tr., 215). After conferring, defense counsel stated, "Pass, your Honor." (Trial Tr., 215). The record shows that after this, the jury was seated and defense counsel had peremptory challenges remaining. Accordingly, plain error applies to the trial court's determination in this case.

**{¶29}** Prospective Juror Sallaz's statements sound similar to the statements made by juror 20 in *Cooper*. As in *Cooper*, Prospective Juror Sallaz had difficulty understanding the presumption of innocence rather than having an intention to ignore the law. *Id.* at ¶ 37. In *State v Lundgren*, 1995-Ohio-227, ¶ 11, 12, the Ohio Supreme Court held that removal for cause was not required of jurors who made statements that they had the impression that the defendant may be guilty or had difficulty with the burden of proof. *Cooper* at ¶ 36, citing *Lundgren*. In *Cooper* and *Lundgren*, further discussions with the jurors showed while they made these statements, they agreed to apply the law as instructed and they recognized their feelings were not what the law required of them. *Id.*

**{¶30}** Here, the trial court did not abuse its discretion by failing to remove Prospective Juror Sallaz for cause. While she initially stated that she could not apply the presumption of innocence, Prospective Juror Sallaz indicated during a more thorough discussion between defense counsel and Prospective Juror Fox, that it made sense that the State either had to prove its case or not and the defendant had no burden to prove his innocence. (Trial Tr., 116).

**{¶31}** In any event, plain error did not occur since Prospective Juror Sallaz was removed from the jury and defense counsel had peremptory challenges remaining after the jury was seated.

Case No. 24 MA 0054

{¶32} Accordingly, we find that Appellant's first assignment of error lacks merit and is overruled.

{¶33} In his second assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO GRANT A MISTRIAL AFTER A JUROR ADMITTED SHE READ A NEWSPAPER ARTICLE PRINTED ABOUT THE CASE AFTER VOIR DIRE AND POTENTIALLY TOLD OTHER JURORS**.

{¶34} On the morning of the second day of trial, the court learned that Juror Russo had read a newspaper article about the case in the local newspaper, the *Vindicator*. (Trial Tr., 242). Juror Russo explained that she receives her newspaper early in the morning and when she looked at the paper that morning, "It was right there, picture, article." (Trial Tr., 242). She indicated that she "read it, closed the paper, got ready. And I haven't said or talked to anybody about it." (Trial Tr., 242-243).

{¶35} The prosecution inquired and Juror Russo stated that she read the article, but could not remember it verbatim. (Trial Tr., 243). She stated that, "you couldn't help reading it was a rape case." (Trial Tr., 244). She indicated that she skimmed the article and gained no additional knowledge about the case from it. (Trial Tr., 246). The defense inquired and Juror Russo explained that she mentioned the article to the court's bailiff that morning and the bailiff told her not to talk about the article. (Trial Tr., 252). She stated that the "most important thing" about the article to her was that the names of the assistant prosecutor and one of defense counsel were in it and she was excited because she knew them. (Trial Tr., 250).

{¶36} The court had a discussion with counsel off of the record and upon returning to the record, the court excused Juror Russo. (Trial Tr., 254). The court assembled the remaining jurors in the courtroom and informed them of the newspaper article. (Trial Tr., 255). The court indicated that the case was also on the television news. (Trial Tr. 255). The court asked if any juror had read the article or watched the news about the case. (Trial Tr., 255). The court then asked that the record reflect that all of the jurors denied reading the article or watching the news about the case. (Trial Tr., 255).

{¶37} Another discussion occurred between the court and counsel off of the record. The court returned on the record and informed the jury that it would be asking each juror individually if Juror Russo said anything about the newspaper article to him or her. (Trial Tr., 256). The court asked each juror and alternate juror individually and each responded that Juror Russo did not say anything to them. (Trial Tr., 256-257).

{¶38} After trial began, defense counsel moved the court to declare a mistrial based on Juror Russo's misconduct and the tainting of the remaining jurors. (Trial Tr., 302-305). The court denied the motion. (Trial Tr., 305).

{¶39} Appellant contends that juror misconduct interfered with his substantial rights when the court failed to grant a mistrial due to Juror Russo's misconduct, which infected the jury. Appellant cites Crim.R. 33(A)(2), which permits a new trial based on jury misconduct. Appellant acknowledges that the trial court has broad discretion in determining whether a mistrial is warranted. However, he complains that the court should have separately questioned each juror about whether they read the article or heard about it from Juror Russo, rather than questioning them collectively.

{¶40} We review the trial court's decision to deny a motion for a mistrial or new trial under abuse of discretion. *State v. Bell*, 2018-Ohio-3486 (7th Dist.), citing *Merlin v. Ankle & Foot Care,* 2017-Ohio-4388, ¶ 7 (7th Dist.) (mistrial) and *State v. Ludt*, 2009-Ohio-416, ¶ 15 (7th Dist.) (new trial). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. "The essential inquiry for both motions is whether the substantial rights of the accused are adversely or materially affected." *Bell* at ¶ 18, quoting *State v. Casto*, 2000 WL 1288178 *9 (9th Dist. Sept. 13, 2020).

{¶41} Appellate review of a trial court's ruling on juror misconduct under Crim.R. 33(A)(2) requires a two-step inquiry. *State v. Fowler*, 2016-Ohio-5867, ¶ 8 (2d Dist.). The first step is to determine if misconduct actually occurred. *Id.* The second is to determine "whether the misconduct materially affected the defendant's substantial rights." *Id.*, quoting *State v. Taylor*, 73 Ohio App.3d 827, 832 (4th Dist. 1999). The party alleging juror misconduct has the burden of establishing prejudice. *Id.* at ¶ 9.

{¶42} The court spoke to Juror Russo and she admitted she looked at the newspaper article. (Trial Tr., 242-243). Thus, the first step of the misconduct inquiry is

answered in the affirmative. The court removed Juror Russo as a juror. (Trial Tr., 254-255). The second inquiry as to whether Appellant was materially prejudiced by the misconduct is answered in the negative. Juror Russo was removed from the jury and each juror and alternate juror collectively and individually responded that they did not read the article, watch television news about the case, or hear from Juror Russo about the article. Moreover, the court instructed the jurors not to read, watch or listen to any report about the case. (Trial Tr., 218). The court even instructed the jurors not to read the *Vindicator* or watch the local news about the case. (Trial Tr., 339). Appellant has failed to establish material prejudice.

{¶43} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

{¶44} In his third assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN DECLARING THE CHILD WITNESS C.P. COMPETENT TO GIVE TESTIMONY HEREIN TO THE PREJUDICE OF THE APPELLANT**.

{¶45} The transcript of the January 31, 2024 final pretrial/competency hearing contains the following discussions:

THE COURT: The Court is just going to ask the defendant - - or the child one question and basically will say, are you able to recall the facts and circumstances surrounding this matter.

MS. MARO: If I may, I think a yes or no to that probably isn't sufficient. I think the Court has to independently determine if she has a recollection, so I think there may need to be more than one question.

{¶46} When asked for suggestions, defense counsel cited two cases from this Court, *State v. Suggett*, 2021-Ohio-4641 (7th Dist.), and *State v. Greenlee*, 2006-Ohio-753 (7th Dist.), holding that a court is required to ask a series of questions of a child witness to determine the child's competency. (Final Pretrial/Competency Hg. Tr., 3-4). The court indicated that it would not ask C.P. about the facts of the case because Appellant was excluded from the hearing. (Final Pretrial/Competency Hg. Tr., 5). The

court determined that it was only going to ask "her is she is being totally honest this morning and I'm going to ask her if she is able to recall facts and circumstances regarding this matter on her own." (Final Pretrial/Competency Hg., Tr. 6).

**{¶47}** The court administered the oath to C.P. and stated the following:

THE COURT: What's - - first of all, do you understand it's very important that you be totally honest when I ask you the second question because you do know the difference between right and wrong, correct?

THE WITNESS: Yes.

THE COURT: Okay. Second question I'm going to ask you is, are you able to recall the facts and circumstances regarding the matter that's going to go to trial next week on your own?

THE WITNESS: I believe so.

(Final Pretrial/Competency Hg. Tr., 7-8).

**{¶48}** Counsel and the court had a discussion off of the record and when they returned, the following discussion was had between the court and C.P.:

THE COURT: Okay. You said I believe so. Is that a yes or no?

THE WITNESS: Well, I think it would be a yes because like my brain - - cause my brain didn't fully like comprehend what you were saying at first.

THE COURT: Okay. Do you understand what I'm saying now? I want to know if you can actually - - you're going to have to sit there, you know, next week.

THE WITNESS: Yes.

THE COURT: And you're going to be nervous.

THE WITNESS: Yes.

Case No. 24 MA 0054

THE COURT:  We'll be here.  I mean, I'll be here.  Nobody is going to beat you up or anything, but you're going to have to testify and you're going to have to tell them what happened and what we need to know is, if you can tell them what happened and what we need to know if, if you can tell them on your own what happened without somebody like telling you what to say.

THE WITNESS:  Yes, I can.

(Final Pretrial/Competency Hg. Tr., 8-9).

**{¶49}**  The court ended the hearing and C.P. testified at trial.

**{¶50}**  Appellant asserts that the trial court's limited questioning of C.P. was insufficient to determine her competency.  He notes that C.P. was only four years old at the time of the alleged incidents and her trial testimony occurred seven years after when she was 11 years old.  He also submits that the allegations occurred when he and C.P.'s mother were involved in a custody battle concerning where C.P. would attend school.

**{¶51}**  Appellant cites *State v. Bright*, 2024-Ohio-2803 (8th Dist.) in support of his assertion and further submits that trial courts must consider the following factors in making a competency determination:  (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what is observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of his or her responsibility to be truthful.  *Bright* at ¶ 38 (quoting *State v. Frazier*, 61 Ohio St.3d 247, 251-252 (1991)).

**{¶52}**  This assignment of error lacks merit.  Evid.R. 601 no longer requires a competency determination of children under ten years old.  It provides that "[e]very person is competent to be a witness except as otherwise provided in these rules."  Evid.R. 601(B) provides disqualifications, including when the court determines that the person is "[i]ncapable of understanding the duty of a witness to tell the truth."  Evid.R. 601(B)(2) (eff. 7/1/20).

**{¶53}**  R.C. 2317.01 also refers to those under ten years old.  It provides that "[a]ll persons are competent witnesses except those of unsound mind and children under ten

Case No. 24 MA 0054

years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

**{¶54}** At the time of the hearing and trial, C.P. was 11 years old. Accordingly, R.C. 2317.01 does not apply because it specifically refers to children under ten years old, unless there was an allegation that C.P. was of unsound mind. There is not. Further, the cases cited by defense counsel at the hearing are distinguishable. *Suggett,* 2021-Ohio-4641 (7th Dist.), involved a child victim-witness who was nearly three years old at the time of the offense and four years old at the time of the competency hearing. *Greenlee*, 2006-Ohio-753 (7th Dist.), involved a five-year-old child victim-witness. The instant case concerns an 11-year-old child testifying to events that occurred when she was four years old.

**{¶55}** As Appellee notes, this Court has held that a competency hearing is not required where a child is over the age of ten years old and no indications of an unsound mind are asserted. *State v. Giffin*, 2022-Ohio-4358 (7th Dist.). In *Giffin,* we held that a competency hearing was not required for a victim who was nearly 14 years old at the time of trial and six to eight years old at the time of sexual contact by the defendant. *Id.* at ¶ 44-46. We relied upon the Ohio Supreme Court's holding in *State v. Clark*, 71 Ohio St.3d 466, 471, that:

> Whether or not the testimony of one over the age of ten concerning an event which occurred before the age of ten is accurate is a credibility issue to be resolved by the trier of fact. Every credibility assessment hinges upon the perceived accuracy and truthfulness with which the testimony is given. As with any witness, opposing counsel will be given an opportunity to cross-examine the witness in order to challenge his or her ability to accurately recall the events. Therefore, once a child attains the age of ten, the presumption of competency created by Evid.R. 601(A) applies equally to that child witness as it would to any adult, regardless of when the events in question occurred.

*Giffin* at ¶ 43, quoting *Clark, supra*, at 471.

{¶56} Therefore, the trial court in this case was under no obligation to hold a competency hearing and therefore the questions asked of C.P. and the discussion had before trial were unnecessary.

{¶57} Accordingly, Appellant's third assignment of error lacks merit and is overruled.

{¶58} In his fourth assignment of error, Appellant asserts:

**THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDENT DUE TO THE FACT HIS CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.**

{¶59} Appellant contends that the jury's verdicts were against the sufficiency and manifest weight of the evidence. He highlights the testimony of M.H, who stated that she and Appellant were in a dispute over a shared parenting plan for C.P. when the sexual assault allegations emerged. (Trial Tr., 254-265, 277). He further notes that even though M.H. was a trained mandatory reporter of sex abuse of children, she allowed C.P. to stay with him after M.H. reported to the local children's services board that Appellant sexually abused C.P. (Trial Tr., 290-293).

{¶60} Appellant also reviews C.P.'s testimony and notes inconsistencies with what she reported to the CAC. He cites C.P.'s testimony about whether she liked spending time at Appellant's house, whether she liked his rules, who taught her the names of body parts, telling Courtney Wilson that no one touched her vagina, the details of the acts, what came out of Appellant's penis, and what Appellant allegedly stated after the assaults. (Trial Tr., 360-361, 365, 368, 375, 378-379).

{¶61} Appellant also emphasizes that C.P. was the only witness against him and presented this inconsistent testimony with a lack of memory to testify about details of the assaults. He questions C.P.'s ability to accurately perceive and communicate about the allegations.

{¶62} Appellant further asserts that Detective Smith offered no evidentiary value with his testimony because he lacked proper training and did not investigate the case. He submits that Detective Smith only offered his opinion of Appellant and his belief that C.P. was credible although he never interviewed her. (Trial Tr., 394, 398, 399, 402).

{¶63} Appellant also contends that Nurse Practitioner Gorsuch offered no evidentiary value and prejudiced him because she testified to her diagnosis over defense counsel's objection. (Trial Tr., 456). He asserts that her testimony contradicts C.P.'s testimony that Appellant rubbed his penis on her and wanted to put it in her mouth. (Trial Tr., 443).

{¶64} Appellant refers to the testimony presented on his behalf, including his former girlfriend, who testified that his penis was uncircumcised and was two different colors, which contradicted C.P.'s description. (Trial Tr., 527, 528). He also cites his own testimony strongly denying all of the allegations. (Trial Tr., 534-539).

{¶65} Appellee responds that the evidence was sufficient to convict Appellant and was not against the manifest weight of the evidence. Appellee contends that the evidence was overwhelming against Appellant, which included the testimony of C.P.'s mother, who noticed more emotional outbursts from C.P. and C.P. not wanting to go to bed. (Trial Tr., 273-277). Appellee also cites M.H.'s testimony that C.P. told her that Appellant put his penis in her mouth. (Trial Tr., 282).

{¶66} Appellee further cites C.P.'s testimony that Appellant would put his penis in her mouth when she was four years old and her fear that her mother would not love her if she found out about the abuse. (Trial Tr., 345-349). Appellee notes that the jury watched C.P.'s interview with the CAC when she was four years old and believed her allegations. (Trial Tr., 351).

{¶67} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 1997-Ohio-52 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence*. State v. Thorn*, 2018-Ohio-1028, ¶ 34 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1991) (superseded by state constitutional amendment on other grounds).

**{¶68}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 1997-Ohio-52. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis in original). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶69}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *Id.*, citing *State v. Woullard*, 2004-Ohio-3395 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 2002-Ohio-4931, ¶ 36, quoting Ohio Const., art. IV, § 3(B)(3).

**{¶70}** The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart,* 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, this Court will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999).

**{¶71}** The jury convicted Appellant of rape under R.C. 2907.02(A)(1)(b), which provides:

(A)(1) No person shall engage in sexual conduct with another when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶72} The jury also convicted Appellant of GSI in violation of R.C. 2907.05(A)(4), which provides:

(A) No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶73} In reviewing for sufficiency of the evidence, we consider the evidence in a light most favorable to the state to determine whether any rational trier of fact could have found the essential elements proven beyond a reasonable doubt.

{¶74} M.H., C.P.'s mother, testified that she was a preschool teacher and a mandated reporter of child abuse. (Trial Tr., 261, 284). She and Appellant conceived C.P. in 2012. (Trial Tr., 261-262). She testified that they lived together, but then separated and had court-ordered shared parenting over C.P. (Trial Tr., 265-266). C.P. would alternate between living with her mom and Appellant on a weekly basis, with a Wednesday overnight visit with the parent with whom C.P. did not spend that week. (Trial Tr., 267-268). M.H. noted that they forgot to include the place of schooling in the custody agreement and Appellant wanted C.P. to attend school in Lowellville, while she wanted her to attend school in Springfield. (Trial Tr., 295-296).

{¶75} M.H. testified that she noticed that C.P. had more emotional outbursts at the age of four in 2016. (Trial Tr. 273-274). She indicated that C.P. would yell and physically lash out at her when she was told it was bedtime. (Trial Tr., 273-274). M.H. stated that more often, the outbursts occurred closer to the end of C.P.'s week with her when C.P. had to go with Appellant. (Trial Tr., 274-275).

**{¶76}** M.H. stated that on October 29, 2016, she noticed C.P. acting anxious by getting out of bed, getting a drink of water, talking a lot, and she did not want to go to bed. (Trial Tr., 277). She asked C.P. what was wrong and C.P. became very quiet. (Trial Tr., 279). M.H. testified that C.P. then cuddled next to her and told her that she did not want to go to Appellant's house anymore because Appellant wanted to put his penis in her mouth. (Trial Tr., 281-282).

**{¶77}** M.H. testified that she reported the incident to the children services agency the next day. (Trial Tr., 289-290). She related that C.P. was scheduled for court-ordered visitation with Appellant that day and she asked the children services worker whether to send C.P. (Trial Tr., 291). She was advised that children services could not give her advice. (Trial Tr., 292). M.H. testified that even though she wanted C.P. to stay with her, she followed the court order and allowed C.P. to go to Appellant's house. (Trial Tr., 292). She stated that the court order was strict and she was afraid of a big confrontation. (Trial Tr. 291-292).

**{¶78}** M.H. related that children services called her the following day and explained the procedure. (Trial Tr., 293). She testified that C.P. returned to her on Wednesday for her weekly overnight visitation and then went back to Appellant's house on Thursday. (Trial Tr., 294).

**{¶79}** M.H. then took C.P. to the CAC in Boardman, Ohio where C.P. was interviewed and physically examined. (Trial Tr., 297-298). M.H. spoke to Detective Smith about the incident. (Trial Tr., 299). M.H. related that she did not teach C.P. any anatomical words, yet C.P. used the word "penis" when she disclosed to her. (Trial Tr., 300-301). She stated she had no motive to have C.P. disclose what she did and she did not coach C.P., except to tell her to tell the truth. (Trial Tr., 301).

**{¶80}** C.P. then testified. (Trial Tr., 342). She related that she was 11 years old and had five siblings. (Trial Tr., 342). She stated that when she was four years old, "inappropriate stuff" happened at Appellant's house. (Trial Tr., 345). She testified that she had to put her mouth on Appellant's penis, which most likely occurred more than five times. (Trial Tr., 347-348). She testified that Appellant told her not to tell her mother. (Trial Tr., 348). She believed that if she told her mother, her mother would not love her anymore. (Trial Tr., 349).

**{¶81}** C.P. related that she told her mother that Appellant made her suck his penis and her mother cried. (Trial Tr., 351). She stated that she was scared testifying and the last time she saw Appellant was seven years ago. (Trial Tr., 351).

**{¶82}** On cross-examination, C.P. stated that she vaguely remembered talking to Courtney Wilson at children services when she was four years old. (Trial Tr., 358-359). She recalled telling her that she liked playing at Appellant's house, but did not like his rules, cleaning up her toys, taking naps, or not being able to go outside by herself. (Trial Tr., 360-362).

**{¶83}** C.P. also testified that Appellant taught her the anatomical words of "vagina" and "penis." (Trial Tr., 365). She related that she first told Courtney Wilson that no one had touched her body and Appellant liked it when she touched his face when they played. (Trial Tr., 367). She did not tell Courtney Wilson that Appellant told her not to tell her mother. (Trial Tr., 368).

**{¶84}** Defense counsel asked if C.P. remembered being asked what Appellant's penis looked like when she was four years old. (Trial Tr., 373). She did not remember answering the question, but she remembered saying it looked like a carrot. (Trial Tr., 373). She stated that the color of Appellant's penis was "normal skin tone," "[f]or him at least." (Trial Tr., 373).

**{¶85}** On redirect examination, C.P. did not recall telling Courtney Wilson that "a slobber" came out of Appellant's penis. (Trial Tr., 378). She also did not recall telling Ms. Wilson that the stuff that came out of Appellant's penis tasted like rotten pizza. (Trial Tr., 379). C.P. confirmed that no one told her how to testify or what to testify about. (Trial Tr., 380).

**{¶86}** Detective Smith testified that after watching Courtney Wilson interview C.P., he took the case and interviewed Appellant on November 14, 2016. (Trial Tr., 388). Appellant's attorney was present at the interview and Heaven Miller, a children services caseworker, was also present. (Trial Tr., 389).

**{¶87}** Detective Smith testified that certain things stood out during his interview with Appellant, including Appellant explaining that one day C.P. said that their dog's penis was out and C.P.'s sisters must have taught her the word. (Trial Tr., 391). He also noted that Appellant came in with an attorney and already knew the allegations against him,

which normally did not happen. (Trial Tr., 391). Detective Smith said that Appellant therefore "had an answer for everything during this interview." (Trial Tr., 391). Detective Smith also thought it odd that Appellant asked whether C.P.'s hymen was still intact. (Trial Tr., 392).

{¶88} Jan Gorsuch, nurse practitioner, physically examined C.P. (Trial Tr., 435, 442). She testified that she initially met with Heaven Miller and M.H., who informed her that C.P. stated that Appellant rubbed his penis on her, on her hand, and wanted her to put it in her mouth. (Trial Tr., 443). She observed the interview of C.P. by Courtney Wilson through a one-way mirror. (Trial Tr., 444).

{¶89} NP Gorsuch testified that C.P. expressed details in her interview, such as describing Appellant's semen as "slobber" and relating that it was clear in color and tasted like "rotten pizza," and stating that it came from Appellant's penis, which looked like a carrot and felt like rubber. (Trial Tr., 448). NP Gorsuch noted that C.P. described sexual experiences in children's terms and this and other indicators from the interview led her to diagnose this a "highly concerning case" of sexual abuse. (Trial Tr., 457). She found no physical evidence of sexual abuse, but stated that it was not unusual to have no such evidence. (Trial Tr., 457-458).

{¶90} Courtney Wilson then testified. (Trial Tr., 476). She interviewed C.P. at the ACH CAC in 2016 when C.P. was four years old. (Trial Tr., 486). She related that that C.P. reported that Appellant last sexually abused her during her last visit with him in November 2016. (Trial Tr., 487). She testified that she developed a rapport with C.P. and C.P. told her that she visited Appellant's house, liked to go there, and liked to play with the dog there. (Trial Tr., 489). C.P. also related that Appellant made her take naps, which she did not like. (Trial Tr., 489).

{¶91} Ms. Wilson further testified that C.P. told her that Appellant would have her come into his bedroom and touch her vagina with his hand and penis, and she would touch his penis with her hand, her vagina, and her mouth. (Trial Tr., 489). Ms. Wilson related that C.P. also told her that Appellant's penis looked like a carrot, and a clear "slobber" would come out of Appellant's penis and go into her mouth, and it tasted like rotten pizza. (Trial Tr., 489-490). She noted that C.P. gave her details on how Appellant would have her wipe the "slobber" off on his shirt and they would wash their hands

together.  (Trial Tr. 490).  C.P. drew a picture of Appellant's penis, which looked like a carrot.  (Trial Tr. 493).

**{¶92}**  The videotaped interview of C.P. by Ms. Wilson was played for the jury.

**{¶93}**  Ms. Wilson stated that after the interview, she made a referral for child abuse.  (Trial Tr., 494).  She also made a report.  (Trial Tr., 497).

**{¶94}**  Construing the evidence in a light most favorable to the prosecution, Appellant's convictions were supported by sufficient evidence.  C.P. testified that when she was four years old, Appellant put his penis in her mouth numerous times.  M.H. testified that when C.P. was four years old, she became anxious and told her that Appellant sexually abused her.  NP Gorsuch testified that C.P. disclosed that Appellant touched her vagina with his penis, and put his penis in her mouth.  She testified that C.P. told her that a "slobber" came from his penis and went into her mouth and it tasted like "rotten pizza."  C.P. drew a picture of Appellant's penis that looked like a carrot.  NP Gorsuch testified that C.P.'s description of sexual experiences in specific children's terms and other indicators from the interview led her to diagnose this a "highly concerning case" of sexual abuse.  This constitutes sufficient evidence of rape and GSI.

**{¶95}**  The same testimony and evidence also establishes that the convictions were not against the manifest weight of the evidence.  The jury was free to attribute more credibility to the testimony of C.P., M.H., NP Gorsuch, and Ms. Wilson over that of Appellant and Ms. Pastore.

**{¶96}**  Accordingly, we find that Appellant's fourth assignment of error lacks merit and is overruled.

**{¶97}**  In his fifth assignment of error, Appellant asserts:

**THE CUMULATIVE EFFECT OF MULTIPLE ERRORS AT TRIAL, EVEN IF SINGULARLY INSUFFICIENT TO WARRANT REVERSAL, TOGETHER DEPRIVED APPELLANT OF A FAIR TRIAL AND HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.**

**{¶98}**  Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually

constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). Thus, if the court finds various single errors to be harmless error, we may reverse based upon the effect of all of these harmless errors together. *State v. Donkers*, 2007-Ohio-1557, ¶ 202 (11th Dist.).

{¶99} A cumulative error analysis is not necessary in this case because the Court finds no merit to any of appellant's assignments of error.

{¶100} Accordingly, we find that Appellant's fifth assignment of error lacks merit and is overruled.

{¶101} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Dickey, J., concurs.

———————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**